# CASES

ADJUDGED IN

# THE COURT OF CHANCERY

## OF THE STATE OF NEW-JERSEY.

### JULY TERM, 1840.

NICHOLAS NEVILLE v. ALBERT C. DEMERITT and others.

An order allowing a defendant to examine his co-defendant as a witness, will always be granted upon a *suggestion* that the party to be examined has no interest in the cause, leaving the question of interest to be settled at the hearing upon the proofs.

A mere trustee may always be examined as a witness by a co-defendant. If it turns out upon the hearing that he has an interest in the cause—that a decree may be obtained against him, although it be for costs only, his testimony will be excluded.

The admissibility of the evidence depends on the question, whether the witness has any interest beyond that of a mere trustee. If he has any individual concern in the case, the evidence is incompetent.

Where the interest of a witness may be released by the party offering him, and no objection is made to the witness on his examination, an objection made for the first time at the hearing, will not be sustained, without giving the party offering him an opportunity to release that interest and to re-examine the witness.

Parties are always examined as witnesses, by the very terms of the order, subject to all just exceptions at the hearing. But witnesses, not parties, should be objected to at the time of their examination.

The declaration, by a witness, of his intention to pay a sum of money rather than the party should lose, will not render the witness incompetent, unless he be legally responsible for the money.

An answer, so far as it is a response to to the bill, will avail the defendant

42

[Noville v. Demeritt et al.]

unless it be overcome by the testimony of witnesses; but so far as it sets up new matter it must be proved.

It is a rule in equity that an incumbrance shall be kept alive or considered extinguished, as will most advance the justice of the case.

Where a deed was delivered through mistake before the whole of the purchase-money was paid or secured, the grantor was permitted to protect himself against the effects of the mistake, by keeping alive, in the hands of a trustee, an incumbrance on the premises created by himself before the sale, although the deed contained covenants of general warranty, and against all incumbrances.

BILL for foreclosure, filed April 3, 1838, stated, that the defendants, Albert C. Demeritt and wife, on the first day of October, 1836, executed to Horace H. Ladd a bond and mortgage to secure the payment of eight thousand dollars, in one year from the date thereof, with interest. The mortgage was upon a house and lot in the city of Newark, and was acknowledged on the 28th day of October, 1836. That the mortgagee, Horace H. Ladd, on the 28th day of November, 1836, assigned the said bond and mortgage to the complainant. That the assignment of the mortgage was duly acknowledged, and was recorded, together with the mortgage, on the 29th day of November, 1836, in the clerk's office of the county of Essex. That the mortgaged premises were conveyed to said Albert C. Demeritt by William Tuttle and wife, by deed dated the 19th day of February, 1836, for the consideration of thirteen thousand five hundred dollars, by which deed the said William Tuttle covenanted that he was the lawful owner of the said premises; that at the time of the execution of the said deed, the premises were not incumbered by any mortgage, judgment, or limitation, or by any incumbrance whatsoever, by which the title of the said Albert C. Demeritt to said premises could or might be changed, charged, altered or defeated; that the said William Tuttle and wife had good right, full power, and lawful authority to sell and convey the said premises in fee; and also, that he the said William Tuttle would warrant, secure, and for ever defend the said premises unto the said Albert C. Demeritt, his heirs and assigns, against the lawful claims and demands of all and every person

and persons, freely and clearly freed and discharged of and from all manner of incumbrances whatsoever. That the said William Tuttle and wife, before making the said deed of conveyance to Albert C. Demeritt, on the 31st day of May, 1834, executed a deed of mortgage upon a part of the same premises, to Edward Blackford, John Agg, Francis G. Blackford and William B. Blackford, to secure a bond given by the said William Tuttle, conditioned for the payment of one thousand dollars with interest, on the 31st of May, 1836, which was duly recorded in the clerk's office of the county of Essex, and on the 26th of June, 1835, was assigned, with the bond, to George Douglass. That Douglass, having occasion for the money secured by the said bond and mortgage, called on William Tuttle to pay the same; but that the said William Tuttle, to prevent a prosecution being commenced against him upon the said bond, and with an intent to defraud the said Albert C. Demeritt and his assigns, and compel his assigns to pay and satisfy the said bond and mortgage, contrary to and in express violation of the covenants contained in the said deed made by the said William Tuttle and wife to the said Albert C. Demeritt, and for the purpose and with the intention of setting up the said bond and mortgage as an outstanding valid and existing claim upon the premises therein described, by a combination and contrivance with his son Joseph N. Tuttle, either directly or indirectly, on or about the 14th of August, 1836, procured an assignment of the said bond and mortgage to be made to the said Joseph N. Tuttle, who still holds the same, and claims by virtue thereof an interest in the mortgaged premises. That the said Joseph N. Tuttle has not any direct interest in the said bond and mortgage so assigned to him, or in the monies secured thereby, but holds the same as agent or trustee for the said William Tuttle, who furnished the means paid to George Douglass as the consideration of the said assignment; and insists that the said bond and mortgage should be decreed to be delivered up to be cancelled. The bill further insists, that even if William Tuttle did not furnish the means paid as the consideration for said assignment to Joseph N. Tuttle, and the

[Neville v. Demeritt et al.]

said mortgage remains in his hands a valid and subsisting lien upon the said mortgaged premises, yet that William Tuttle ought, in order to avoid circuity of action, to be compelled by virtue of the covenants contained in his deed to Albert C. Demeritt, (to the full benefit and protection of which, the complainant insists he is entitled,) to satisfy and cancel the said bond and mortgage given by the said William Tuttle and wife, and assigned to the said Joseph N. Tuttle, and relieve the mortgaged premises from the same; or, in case the mortgaged premises should be liable to pay the same, and should not bring sufficient to pay and satisfy the complainant's mortgage, then that William Tuttle should be compelled to pay the amount due upon the bond and mortgage given by him and assigned to Joseph N. Tuttle, if the deficiency arising upon the sale of the mortgaged premises shall amount to that sum, or so much thereof as will satisfy such deficiency. The bill prays the usual decree for foreclosure and sale of the mortgaged premises; that Joseph N. Tuttle and William Tuttle may be decreed to deliver up the said mortgage so given by the said William Tuttle and assigned to Joseph N. Tuttle, to be cancelled; that the said William Tuttle may be compelled to satisfy and cancel the same, and relieve the said mortgaged premises therefrom, and be decreed to keep and perform the covenants contained in his deed to Albert C. Demeritt; the complainant decreed to be entitled to the full benefit and protection of said covenants, and be protected from and against the said mortgage held by Joseph N. Tuttle; and that William Tuttle may be decreed to satisfy any deficiency that may arise in satisfying complainant's mortgage by reason of the said mortgage assigned to Joseph N. Tuttle.

The answer of William Tuttle admits the execution of the deed from himself and wife to Albert C. Demeritt, the prior mortgage from Tuttle and wife to Edward Blackford and others, and its assignment, as set forth in the complainant's bill; but states, that on or about the 1st of April, 1835, this defendant, while the owner and in possession of said premises, agreed with William T. Voorhies (his nephew) to sell a part of the mort-

gaged premises described in the bill of complaint to him, for the consideration of two thousand two hundred dollars, to be paid or secured by said Voorhies on the delivery of the deed. That it was understood and agreed between this defendant and said Voorhies, that the lot should be conveyed free and clear of all incumbrances, and that so much of the consideration money to be paid by Voorhies as should be necessary for that purpose, should be applied to the payment and satisfaction of the said mortgage given by defendant to Edward Blackford and others. That Voorhies and this defendant, having full confidence in each other, the agreement between them was not reduced to writing, nor was any memorandum made thereof. That Voorhies being unprepared to pay the purchase money, no deed was made to him, but he, with the knowledge and consent of this defendant, took possession of the said lot, and in the summer of 1835 erected thereon and on an adjoining lot owned by Voorhies, two large brick buildings. That at different times during the summer and fall of 1835, Voorhies paid this defendant two hundred and eighty-one dollars and sixty-three cents, in part payment of the sum of two thousand two hundred dollars, agreed to be paid as the purchase money of said lot, and for the interest thereon. That in the month of February, 1836, Voorhies informed this defendant that he had agreed to sell the said lot, with other real estate, to Albert C. Demeritt, who had agreed to pay to this defendant the remainder of the price stipulated to be paid by Voorhies to this defendant, which then amounted to about two thousand dollars, as follows, viz.: to pay one thousand dollars in money on the delivery of the deed, and to secure the payment of the remaining one thousand dollars, with interest, in one year, by bond and mortgage upon the said lot, and requested this defendant to convey the lot directly to Albert C. Demeritt, which defendant agreed to do when Demeritt complied with the terms above stated. That Voorhies caused a deed for said lot, from this defendant and wife to Demeritt, to be prepared, which was duly executed and acknowledged, and which defendant admits was the same deed as that set forth in the bill of complaint.

That said deed was retained by defendant in his hands until D. A. H. esquire, by whom the said deed was prepared, and who defendant believed acted as attorney both for Voorhies and Demeritt in the transaction of the business, handed to defendant a bond executed by A. C. Demeritt to this defendant, bearing date February 19th, 1836, conditioned for the payment of one thousand dollars in one year from date, with interest half-yearly, and also a mortgage to secure the payment thereof, made and executed by A. C. Demeritt and wife to defendant, upon the lot described in the last mentioned deed ; and the said D. A. H. at the same time requested defendant to hand him the deed of conveyance executed by defendant and wife to Demeritt, as before mentioned ; and this defendant being informed by D. A. H. that Voorhies and Demeritt had settled between themselves the matters connected with the transfer of the said real estate, and believing that D. A. H. fully understood the terms upon which this defendant was willing and had agreed to convey said lot, and that he would not deliver the said deed to Demeritt until the sum of one thousand dollars, agreed to be paid on the delivery of the said deed, had been fully paid and satisfied, gave the said deed to D. A. H. and received from him Demeritt's bond and mortgage. That defendant afterwards learned to his great surprise, that D. A. H. was ignorant that the said sum of one thousand dollars was to be paid on the delivery of the deed, and that he had immediately after the delivery of the deed to him by defendant, lodged it in the clerk's office of the county of Essex, and caused the same to be recorded according to law. That this defendant shortly afterwards gave notice to Demeritt that the deed had been put on record through mistake, that defendant was entitled to receive one thousand dollars before the deed was rendered operative, and requested Demeritt to pay the same, which he refused or neglected to do. Admits that the consideration in the deed from defendant and wife to Demeritt is therein stated to be thirteen thousand five hundred dollars, and that it is expressed to have been paid by Demeritt to this defendant and his wife at the execution of the deed, and that the receipt thereof is thereby

[Neville v. Demeritt et al.]

acknowledged; but expressly denies that this defendant ever made any bargain with Demeritt respecting said lot, or that he ever had any communication with him or any person on his behalf respecting the sale and conveyance of said lot, before the communication with D. A. H. above referred to; that he has ever received any consideration for the sale and conveyance of the said lot, other than the sum of two hundred and eighty-one dollars and sixty-three cents, above stated to have been paid by Voorhies, and the further sum of twenty-three dollars and thirty-seven cents, interest on the said sum of two thousand dollars up to the date of the deed from defendant and wife to Demeritt, and the further sum of one thousand dollars secured by Demeritt's bond and mortgage to this defendant. States that at the time that Demeritt, while negociating with Voorhies for the purchase of the lot, was apprised that the title was not in him, but in this defendant, that two thousand dollars of the purchase money agreed to be paid by Voorhies remained unpaid, and that this defendant was unwilling to deliver a title until one thousand dollars should be secured by mortgage, and the remaining one thousand dollars should be paid in money, which this defendant insisted on receiving to enable him to discharge his mortgage for one thousand dollars upon the mortgaged premises; and that the said Demeritt agreed to pay the said sum of one thousand dollars in money, and to execute a bond and mortgage to this defendant upon the said lot, on the delivery of the deed by defendant. That at the time of receiving the deed from this defendant and his wife, Demeritt knew of the mortgage thereon previously given by this defendant and his wife to Edward Blackford and others, and that the same remained uncancelled, a legal incumbrance upon the said lot. Admits that about the 4th of August, 1836, this defendant, being called upon by the agent of George Douglass, to whom the bond and mortgage given by this defendant to Edward Blackford and others had been assigned, for the payment thereof, raised the sum of one thousand and forty dollars and sixty-seven cents, the amount of principal and interest due thereon, and thereby procured an as-

[Neville v. Demeritt et al.]

signment of said bond and mortgage to be made to his son Joseph N. Tuttle, and that the said Joseph N. Tuttle holds the said bond and mortgage as trustee and agent of this defendant, and has no direct interest therein or in the monies secured thereby. Denies that the said assignment was by the defendant procured to be made with any fraudulent intent or purpose, but solely to protect himself from loss or injury in consequence of the recording of the deed of conveyance for the said lot through mistake and misunderstanding. Insists that the mortgage executed by this defendant and wife, and held by Joseph N. Tuttle as trustee for this defendant, is a valid and subsisting lien and incumbrance on the lot of land therein described, and entitled to priority in payment over any mortgage or incumbrance upon the same property created or imposed subsequent to the registry of the said mortgage.

The answer of Joseph N. Tuttle states substantially the same matters contained in the answer of William Tuttle, and admits that he holds the bond and mortgage executed by William Tuttle and wife to Edward Blackford and others, and assigned to him, as agent or trustee for the said William Tuttle.

After the cause was at issue, an order was made on the application of William Tuttle, one of the defendants, for the examination of Joseph N. Tuttle, a co-defendant, in pursuance of which order the testimony of the said J. N. Tuttle had been taken and was read upon the hearing.

The cause came on for hearing upon the bill, answers of William Tuttle and Joseph N. Tuttle, replications and proofs.

*E. Vanarsdale, jun.* and *E. Vanarsdale*, for complainant, insisted that J. N. Tuttle was not a competent witness. He is a party; he may pay costs or receive them. By his answer he prays for costs : 2 *Mad. Chan.* 316 ; 3 *J. C. R.* 612 ; 3 *Atk.* 401. He is also a trustee : 2 *Brown's Ch. Cases*, 330 ; 3 *Paige*, 564. That Wm. T. Voorhies was also incompetent. He has declared that he would pay the thousand dollars to Tuttle before he should lose it. He is also interested, for he is bound to pay Tuttle.

[Neville v. Demeritt et al.]

The deed from Tuttle to Demeritt is absolute on its face. There was no declaration of a contrary intention at the time of executing it. Declarations of the intention or understanding of a grantor, different from the intent apparent on the face of the deed, or of conditions annexed to it, to be effectual, must be made at the time of executing it: 1 *J. C. R.* 240, 247, 251; *Noy's Rep.* 6; 9 *Coke*, 137.

Tuttle has no equitable lien upon the land for the thousand dollars remaining unpaid. He took security on the land for a part of the money, and never intended to look to the land for the balance: 1 *Paige*, 30.

The covenants in the deed from W. Tuttle to Demeritt run with the land. There is a breach of the covenant against incumbrances, and the assignee of the mortgage may hold him liable: 3 *Barn. and Ald.* 392; 2 *Cowen*, 137, 143; *Cro. Eliz.* 373, 436; *Cro. Car.* 503; 4 *M. and S.* 53; *Platt on Cov.* 304; 3 *Law Lib.* 135.

The mortgagee is entitled to the benefit of these covenants: 18 *Law Lib.* 151, 351; 1 *Peters*, 441; 4 *Amer. Com. Law*, 57.

If Tuttle is liable on the covenants contained in his deed, the court, to prevent circuity of action, will hold him liable at once: 5 *Cranch*, 322, 330; 17 *Mass.* 586; 7 *John.* 358; 13 *John.* 105; 1 *Story's Eq.* 82–3–4.

They also cited 18 *Law Lib.* 161; 8 *Mass.* 846; 4 *Wash.* 587; 5 *Cowen*, 137, 508; 9 *Cowen*, 39; 10 *Wend.* 180; 5 *Peters*, 483; 6 *J. C. R.* 393; 4 *Mass.* 629; 2 *Brown's Ch. Cas.* 16; 2 *Vesey*, 400; 3 *Paige*, 557; 1 *Conn.* 147; 1 *Story's Com.* 173; 4 *Peters*, 85.

*A. Armstrong* and *I. H. Williamson*, contra, insisted that a mere trustee was always a competent witness in equity, though a party to the suit: 2 *Mad. Chan.* 331, 415, 447; 3 *P. W.* 181; 3 *Atk.* 75; 1 *Ball and Beatty*, 99, 413; 3 *Atk.* 95, 604; 1 *Ball. and Beatty*, 96; 1 *Bl. Rep.* 365; 12 *East.* 250.

43

[Neville v. Demeritt et al.]

A witness will not be excluded on the ground that he is under an honorable obligation to pay money : he must be under a legal obligation, or at least suppose himself to be so : 4 *Wend.* 292 ; 18 *Wend.* 476 ; 1 *Paige,* 18.

If the court think Voorhies incompetent on the ground of interest, as no objection to his competency was made at the examination, an opportunity should be afforded to release the interest and re-examine the witness.

They also cited 2 *T. R.* 366 ; 18 *Law Lib.* 107, 248 ; *Sugden on Ven.* 385, 387, 541 ; 4 *Hals.* 139 ; 5 *Hals.* 20 ; 10 *Wend.* 310 ; 1 *John. Cas.* 114 ; 2 *Wend.* 308 ; *Daniel's Ex. Rep.* 71 ; 3 *Pow. on Mort.* 1061 *B.*

THE CHANCELLOR. On the 1st of October, 1836, Albert C. Demeritt and his wife executed to Horace H. Ladd a mortgage on a house and lot of land in the city of Newark, to secure the payment of a bond for eight thousand dollars, in one year from the date thereof. This bond and mortgage, on the 28th of November following their date, were assigned by Ladd to the complainant. The object of the bill is to procure the foreclosure and sale of the premises contained in the mortgage, to satisfy the amount due thereon. No question is made respecting this mortgage ; but the controversy arises upon a mortgage on a part of the same premises, given prior to the complainant's, (on the 31st of May, 1834,) by William Tuttle, a former owner, to Edward Blackford and others, for one thousand dollars. Whether, under the circumstances, this mortgage for one thousand dollars is or is not a valid and subsisting lien on the property, is the whole dispute in the cause.

The mortgaged premises were purchased by Albert C. Demeritt, the mortgagor, with a large amount of other property, from William T. Voorhies. At the time of the purchase Voorhies had no deed for the property, but had a verbal agreement with his uncle, William Tuttle, to convey it to him for two thousand two hundred dollars, one thousand two hundred dollars of which was to be paid in cash before receiving a deed, and the

remainder, being one thousand dollars, was to remain on bond and mortgage. Upon the faith of this agreement, Voorhies went on and erected on the lot a large four-story brick building. Voorhies had paid his uncle between two and three hundred dollars only at the time he sold to Demeritt, and the agreement (as alleged) between Voorhies and Demeritt was, that Demeritt should take Voorhies's place and fulfil his contract with Tuttle. It seems that Tuttle had nothing to do with the contract made between Voorhies and Demeritt, and was therefore on his part no way bound to vary the original terms of his agreement for the sale of the lot.

As Demeritt was now substituted in the place of Voorhies, Tuttle was entitled, before giving him a deed, to receive in cash one thousand dollars, and a bond and mortgage for one thousand dollars. This would fully have secured the purchase money, and was a very natural and discreet course. Demeritt and Voorhies, in their negociations, employed David A. Hayes, esquire, as their attorney and agent, who called on Tuttle and obtained the deed for the property, and gave him only Demeritt's bond and mortgage for one thousand dollars, but no money. Tuttle says in his answer, that reposing great confidence in Mr. Hayes, and supposing he knew all about the terms on which the sale was made, he supposed that he would not deliver the deed over to Demeritt until he received the thousand dollars in cash. He relied, in other words, on Mr. Hayes seeing to his rights in the matter. Mr. Hayes, in his deposition, says, that he was ignorant of the terms of the agreement between Voorhies and Demeritt in its details, at the time he got the deed from Tuttle. That when he handed the bond and mortgage of Demeritt to Tuttle for one thousand dollars, which he had previously caused to be executed, and asked for the deed, Tuttle at first hesitated, but finally gave him the deed. He recollects something being said by Tuttle about a thousand dollars, but he supposed at the time that it referred to the thousand dollars secured by the bond and mortgage, and did not know that any thing more was coming to Mr. Tuttle. Mr. Hayes, after receiving the deed, sup-

[Neville v. Demeritt et al.]

posing the business was all finished, placed it on record. By this course Tuttle parted with the title to his property, and received a bond and mortgage for one thousand dollars, but without the payment of the remaining thousand dollars, or any security or even evidence that it was due from any person. Shortly after this, and as I suppose on being aroused from so negligent a course by his son, he sent to Mr. Hayes for the thousand dollars, and was then informed that he had not received it, and had placed the deed on record. Application was made to Demeritt to rectify the mistake, but he never did so. Tuttle then placed his bond and mortgage for one thousand dollars on record, which has since been paid off and discharged.

The situation of the lot then stood thus. Demeritt had the title. There was upon it a mortgage of one thousand dollars given by Tuttle to Blackford and others, and a mortgage of one thousand dollars given by Demeritt to Tuttle. The object of Tuttle in requiring a payment in cash of one thousand dollars, no doubt was to take up the bond and mortgage to Blackford given by him, and for which he was liable on the bond. Things remained in this situation until the summer of 1836, when the Blackford mortgage becoming due, George Douglass, to whom the same had been assigned, called on Tuttle for payment of his bond and mortgage, who advanced the money and caused an assignment of the papers to be made to his son Joseph N. Tuttle, in trust for his use. The answers of the defendants frankly declare that the money was furnished by William Tuttle, and the assignment made with a view to protect him from loss by the nonpayment of the thousand dollars at the delivery of the deed. The assignment of the bond and mortgage is in the usual form, and the instruments are in no way cancelled either by obliterating the names, tearing off the seals, or entering satisfaction on the records. In form the proceedings are right.

Thus far I have stated the facts of this case, as they presented themselves to my mind, without inquiring into the legality of the proofs by which they are sustained, or settling any principles applicable to them. These will now be considered.

[Neville v. Demeritt et al.]

Two of the defendant's witnesses, and those important to make out his defence, are objected to as incompetent ; to wit, Joseph N. Tuttle, the son and trustee of the defendant William Tuttle, and William T. Voorhies, the original purchaser from Tuttle, and the same who afterwards sold to Demeritt. After carefully considering the objections made, I can see no sufficient reason for excluding them as witnesses. The positions they occupy with respect to this transaction can only affect their credit. Joseph N. Tuttle has no interest, as he declares, and as the whole case shows. He is a mere trustee for his father. In fact, the complainant so charges in his bill, and it is on this very point that he relies for defeating the defendant's claim. Had Joseph purchased this bond and mortgage with his own money and on his own account, no question could be made as to his right to have his money out of the sale of the property. It is because he is a mere trustee, and the whole beneficial interest in his father, that his rights under the mortgage are denied. The rule which allows a defendant to examine his co-defendant is indispensable, otherwise a complainant, to get rid of a witness, has only to make him a party. And this rule will always be granted upon a suggestion that he has no interest in the cause, leaving that question to be settled at the hearing upon the proofs. A mere trustee may always be examined as a witness by a co-defendant : 2 *Mad. Chan.* 416. If it turns out upon the hearing that he has an interest in the cause ; that a decree may be obtained against him, although it be for costs only, then he will be excluded. This is the amount of the cases cited from 3 *Atk.* 401, and 3 *Johns. Ch.* 612. In the last cited case the witness had a decided interest, was charged as a *particeps criminis,* and was to be affected by the result of the cause. The cases on this point are numerous, but they all turn on the same question, Has the witness any interest beyond that of a mere trustee ? has he any individual concern in the case ? if he has, he must be shut out ; if not, he is a good witness. What interest has Joseph N. Tuttle in this case beyond that of a naked trustee ? He paid no money, he holds the assignment for another, and wheth-

[Neville v. Demeritt et al.]

er the decision shall be for or against the defendants, it can make no difference to him. It is said that he asks for costs in his answer. That is true; and so does every defendant in his answer: it is the form in which they are drawn. As to costs, I can place no trustee in a fairer position than this witness, and to exclude him on that account would be to change the rule admitting trustees as witnesses, and shut them out entirely.

The other witness objected to is William T. Voorhies. He is no party to the suit, and therefore as to him it is a mere question of interest. That interest, if any, must consist in his liability over to William Tuttle for the thousand dollars. No objection was taken to this witness on his examination, and in a case where that interest might be released by the party offering him, I would certainly not sustain such an objection for the first time made at the hearing, without giving an opportunity to release that interest and for a re-examination, if the party thought proper. As to parties, they are always examined as witnesses, by the very terms of the order, subject to all just exceptions at the hearing; but this is not so in the case of witnesses not parties. They should be objected to at the time of their examination. This is the rule in the state of New-York: *Mohawk Bank* v. *Atwater*, 2 *Paige's Ch.* 60; and the same will be found suggested in the case of the *Ex'rs of Howell* v. *Auten and others*, as the true practice in this court. But in this case, had the objection been taken at the proper time, I do not consider the witness interested in the cause. Tuttle, by accepting Demeritt as the purchaser, and dealing with him upon the same terms as Voorhies, virtually released Voorhies from all further liability to him; especially so upon his neglect to avail himself of that part of his contract which called for the payment of one thousand dollars in money before giving the deed. After this, he had no claim on him. Voorhies has indeed said, that rather than Tuttle should lose the thousand dollars he calculated to pay it, but did not feel bound to do so. This is one of those calculations which will be found very seldom realized, and at best but the expression of an honorable feeling, which can never be set up as

a sound objection to any witness, unless he be legally responsible for the money. These witnesses, therefore, are in my judgment competent, and their evidence should be read in the cause.

By the admission of this evidence, the case is relieved from all embarrassment as to the true state of the facts, and they will be found to be correctly considered in the first part of this opinion. The answers of the defendants correspond, so far as Joseph has any knowledge of the facts, and the whole case is confirmed in the view which I have taken of it by the depositions in the cause. Much of the matter in the answers is not responsive to the bill, and much is. The rule is well settled on this point, that the answer, so far as it is a response to the bill, will avail the defendant, unless it be overcome by the testimony of the witnesses; but that, so far as it sets up new matter, it must be proved. I need not go into any critical examination on this part of the case, for it will be found that the answer of the defendant, so far as it is not responsive to any charges in the bill, has been fully sustained by the witnesses. Voorhies sustains the answer, by stating, that he was to pay Tuttle for the lot two thousand two hundred dollars; that he was to pay one thousand two hundred dollars on receiving his deed, and secure the balance on bond and mortgage; that in his negociations with Demeritt he told him what his agreement with Tuttle was, that he had paid two hundred dollars, and that he, Demeritt, when he took his deed, must pay one thousand dollars and secure the remaining thousand dollars by bond and mortgage, and that Demeritt acceded to those terms. David A. Hayes proves the transaction as it took place when the deed was given, and that the thousand dollars was never paid. He says Demeritt told him in a conversation he had with him since, that there was a thousand dollars coming on the lot, and that he would pay it to Voorhies when he fulfilled his contract. And Joseph N. Tuttle says, that when he came home and learned how the business stood, he went to New-York in company with Mr. Hayes, to see Mr. Demeritt; and that although he cannot recollect the particulars of the conversation, yet that Demeritt did assent to the proposition then

made to him to pay the thousand dollars, and he left him satis- fied that he would do so if he could raise the money.

From all this evidence, I can entertain no doubt as to the nature of this transaction, and that Mr. Tuttle was entitled to receive from Demeritt in cash one thousand dollars more than he got at the time of delivering the deed to Mr. Hayes. I cannot suppose that he would designedly let the title for his property pass out of his hands, without at least some evidence in his pos- session of the amount due him for the purchase money. He has a clear equity to be restored to this money as against Demeritt and all others who may not be injured by thus reinstating him in his rights. Had Tuttle received this money, he would have taken up the Blackford mortgage, and all would have been right and according to the contract of the parties; and if not, he must have been liable on the covenants in his deed. Demeritt at first probably thought, that as the mortgage was still on the property, it would not make much difference whether Tuttle got the mo- ney from him or not; but since then, having got into some diffi- culty with Voorhies, he claims to have the property discharged altogether, and make Tuttle look to Voorhies for his money. This would be rank injustice, and do violence to the whole spirit of the contract.

The *property* should pay this mortgage, and it remains only to be seen whether the court have the power so to direct. I can- not doubt either the power or the duty of the court so to do. The bond and mortgage are not cancelled. The mortgage remains open on the record, and has always remained there as notice to all the world that the lot it covers was bound to discharge it. Mr. Hayes says that he gave actual notice of its existence to Demeritt before he took the title, and whether the other parties ever ex- amined it or not, the record was constructive notice to them. It is a rule in equity, that an incumbrance shall be kept alive or considered extinguished, as shall most advance the justice of the case: *Starr* v. *Ellis,* 6 *Johns. Ch.* 395. Why should the aid of the court be given the complainant to declare this mortgage discharged, of which he had notice, and which upon every

[Neville v. Demeritt et al.]

principle of justice should, before that is done, be paid out of the property. Had the parties, when Douglass called for his money, intended to put these papers out of existence, or had innocent persons without notice been affected by it, the case would have been different; but here it so turns out that an opportunity is afforded of doing complete justice to a party without injuring any body, and I feel myself bound to extend the aid of the court for that purpose.

There is one other view of this case presented by the complainant's counsel, which must not be overlooked. They insist that if equity calls for the allowance to the defendant of the amount of this mortgage, at all events he is liable on his covenants in his deed to Demeritt, of which the complainant may avail himself, and that to avoid circuity of action the court will give the party the advantage of that position, and settle the whole cause at once. How far a mortgagee can avail himself of these covenants, and indeed how far, or in what cases, the court will adopt this principle, it is not now material or necessary to inquire, since from the view I have taken of the case, there could be no such liability on the part of Tuttle in this court, nor indeed in any other, except upon the technical rules applicable to suits in a court of law. There could be no justice in his paying any damages by reason of an incumbrance circumstanced like the one we have been considering in this cause. In a proper case for its exercise, it would appear to me that the course suggested by this argument is sustained by the cases.

I am, for these reasons, of opinion, that the bond and mortgage assigned to Joseph N. Tuttle, is a valid lien on the mortgaged premises, and entitled to be first paid, with the defendants' costs in this action. They will, of course, stand as security for no more than is due Mr. Tuttle upon his contract with Mr. Voorhies, which is stated to be one thousand dollars with interest from the date of his deed to Demeritt. There must be a reference to a master to ascertain this amount, together with

44

[Neville v. Demeritt et al.]

the amount due the complainant and the other parties having any mortgage or other claim on the property.

'Order accordingly.