STURK J. GJERNESS vs. JOHN A. MATHEWS, impleaded, etc.

November 16, 1880.

Innocent Mortgagee of Fraudulent Grantee—Purchase of Outstanding Paramount Title.—A person who has innocently and in good faith taken a mortgage upon real property from one holding the legal title under a conveyance which is fraudulent and void as to the creditors of the grantor, upon acquiring subsequent knowledge of the fraud, may lawfully buy in an outstanding paramount title, not affected thereby, for his own benefit.

Contract—Conditions Precedent.—When a right sought to be asserted under a contract is dependent upon the prior performance of conditions precedent, such performance must be shown to entitle a party to enforce the right.

Plaintiffs, as creditors of T. G. Fladeland, brought this action in the district court for Fillmore county, against T. G. Fladeland, John G. Fladeland and John A. Mathews, to set aside, as fraudulent as against the plaintiffs, a conveyance from T. G. to John G. Fladeland, to have a certain mortgage of the same land by John G. Fladeland to Mathews declared to have the force and effect of a mortgage from T. G. Fladeland to Mathews, and not otherwise; to have Mathews, as holder of a title to the same premises derived under foreclosure of a mortgage to one Marsh, decreed to hold such title in trust for plaintiffs, and to account for and pay over to plaintiffs, as creditors of T. G. Fladeland, the proceeds of a sale of the land made by Mathews to one Hagan, and for general relief. The defendant Mathews answered the complaint, and the action was tried by a referee, whose findings of fact were, in substance, as follows.

The plaintiffs Gjerness, Hanson and Iverson severally recovered judgments in the district court for Fillmore county, in August, 1874, on debts accruing prior to April 12, 1873, and on October 15, 1874, an execution on each of the judgments was returned unsatisfied. On September 11, 1877, Iverson assigned his judgment to the plaintiffs C. H. and L. J. McCormick, as collateral security for a debt due from him to them.

On April 21, 1872, the defendant T. G. Fladeland purchased of one Marsh certain land in Fillmore county, described in the complaint, receiving therefor a conveyance in fee, and executing to Marsh a purchase-money mortgage for $930.28, (which should have been for $840, only,) and the deed and mortgage were duly recorded on July 25, 1872. On April 12, 1873, T. G. Fladeland, with intent to defraud plaintiffs and his other creditors, and without consideration, conveyed the land to his brother John G. Fladeland, who took the conveyance with knowledge of his grantor's fraudulent intent. On January 19, 1874, Marsh foreclosed his mortgage, and at the sale purchased the land for $1,033.68 (the amount then due on the mortgage) and received the proper certificate of sale, which was duly recorded on February 6, 1874. On April 25, 1874, T. G. Fladeland agreed with defendant Mathews for a loan of $1,350 by the latter to the former, to be evidenced by three notes of that date, to be made by John G. Fladeland, one for $350, payable in six months, and two notes of $500 each, payable in three and five years respectively, and to be secured by a mortgage by John G. Fladeland and wife on the said land. The notes and mortgage were made and delivered to Mathews on April 25, 1874, and he then paid to T. G. Fladeland, as part of the loan of $1,350, the sum of $375, but did not then pay nor has he ever paid to him the remaining $975. The mortgage was duly recorded on April 27, 1874, and has never been foreclosed or satisfied of record.

At the time the loan was negotiated, and as one of its conditions, T. G. Fladeland agreed to furnish Mathews with an abstract of title to the land as soon as he could obtain it at the county seat, which abstract should show the title to the land to be clear and perfect in John G. Fladeland, and also stated that the Marsh mortgage was then due, but had not been foreclosed, and could be paid off at any time; and it was agreed that T. G. Fladeland should at once procure and furnish Mathews with a satisfaction of the Marsh mortgage, and that, upon receiving the abstract showing a clear title in John G. Fladeland and also the satisfaction of the Marsh mortgage, Mathews should pay over to T. G. Fladeland the balance of the loan.    The abstract was not furnished till August 8, 1874, and did not show a clear unincumbered title in John G. Fladeland; the satisfaction of the Marsh mortgage was never furnished, and the terms and conditions of the loan of $1,350 were never fully complied with, nor the loan completed.    Mathews first learned on May 20, 1874, of the fraud in the conveyance from T. G. to John G. Fladeland, and on July 22, 1874, he first learned of the foreclosure of the Marsh mortgage.

On November 9, 1874, Mathews procured from Marsh an assignment of the certificate of sale on the foreclosure, paying him therefor the sum of $1,094, being the amount then due on the certificate, and required to redeem from the sale.    Part of this $1,094 consisted of the $975 retained by Mathews from the $1,350 he had agreed to lend to T. G. Fladeland.    The time for redemption from the foreclosure sale to Marsh expired on January 19, 1875, and on April 13, 1875, Marsh executed and delivered to Mathews a quitclaim deed of the land, which was recorded April 21, 1875, and the only consideration for which was the $1,094 paid for the assignment of the certificate.    On April 16, 1875, John G. Fladeland and wife executed and delivered to Mathews a quitclaim deed of the land, in consideration of the surrender

of the three notes and mortgage held by Mathews, and for no other consideration. This deed was recorded on April 21, 1875.

On November 9, 1874, when Mathews procured the assignment from Marsh of the certificate of sale, he had full knowledge of the fraud in the conveyance from T. G. to John G. Fladeland, and he took the assignment to secure the title to the land in himself, and without the knowledge or consent of the Fladelands, or either of them. Neither of the Fladelands has ever consented to the assignment. T. G. Fladeland had no knowledge of and never consented to the execution and delivery of the quitclaim deed from Marsh to Mathews, or of the quitclaim deed from John G. Fladeland and wife to Mathews, or the surrender of the notes and mortgage by Mathews.

At a conversation between T. G. Fladeland and Mathews at the time of the agreement for the loan of $1,350, Iverson, one of the plaintiffs, was present, and understood T. G. Fladeland to say that he was himself the owner of the land.

Mathews never offered to T. G. Fladeland to rescind the agreement for the loan, and never demanded of him the $375 actually lent, nor offered to deliver to him the notes and mortgage made by John G. Fladeland. But after learning that the conveyance to John G. Fladeland was fraudulent, Mathews did offer to him to rescind the agreement, and demand of him that it be rescinded, and demand repayment of the $375, and that John G. take back his notes and mortgage, which he refused to do. After his purchase of the certificate of sale and the expiration of the time for redemption, Mathews offered to convey the land to John G. Fladeland for $1,700—a little less than it had cost him—which offer was refused. On August 12, 1875, Mathews conveyed the land in fee to one Hagan, for $2,700, which was paid in cash.

Among other conclusions of law the referee held that Mathews acquired no title to the land by the assignment or the

quitclaim deed from Marsh, or the quitclaim deed from John G. Fladeland and wife, except in trust for the creditors of T. G. Fladeland, including the plaintiffs, and that as such trustee he should pay over to plaintiffs, to the extent of their claims, the amount received on the sale to Hagan, less the amount ($1,688.70, and interest,) which the land had actually cost him. Judgment was accordingly ordered and entered for plaintiffs, and the defendant Mathews appealed.

*C. H. Berry* and *H. R. Wells,* for appellant.

*N. Kingsley* and *O. S. Berg,* for respondent.

CORNELL, J. The only estate or interest in the land in question which could be affected by any resulting trust in favor of the respondents as the creditors of T. G. Fladeland, was that which belonged to him when he made the fraudulent conveyance to J. G. Fladeland. That was the equity of redemption remaining in him as mortgagor, after the foreclosure of the mortgage which he had previously given to Marsh, and the sale of the premises thereunder, the time for redemption not having then expired. That equity appellant never acquired nor held. The quitclaim deed to him from J. G. Fladeland conveyed nothing, for all rights of the mortgagor, T. G. Fladeland, and of those subsequently claiming under him, had then become extinguished by the foreclosure of the Marsh mortgage, and the perfection of the title thereunder, through the failure of any one to redeem within the time allowed by law. The mortgage which he took from the fraudulent grantee did not pass that equity, but only operated as a lien upon it, giving him the right of redemption of a junior mortgagee from the sale upon the foreclosure of the prior mortgage to Marsh. This right he did not exercise. He has never foreclosed his mortgage, nor asserted any claim to the property under it, so far as appears from the record. As no one can be treated as a trustee of an estate or interest in property which he has never held, and over which he has never had any control or right of control, it is plain that appellant cannot be made liable as such in respect to the

equity of redemption which was transferred to J. G. Fladeland by the conveyance from T. G. Fladeland, and which was the only estate or interest in the land that was passed by that conveyance.

The title which he acquired from Marsh by the purchase and assignment of the certificate of sale, and which became perfect and absolute through the failure of any one to redeem, was not. affected by any trust arising out of the fraudulent conveyance from T. G. to J. G. Fladeland. By it the equity of redemption which remained in T. G. Fladeland after the execution of the mortgage to Marsh, and which was the only property in which the respondents, as creditors of the former, had any interest, was cut off and extinguished. It was legally competent for appellant to make the purchase he did, and to take the assignment of the certificate of sale in his own name and for his own benefit. The agreement between him and the Fladelands contained no stipulations preventing it, or making it his duty to redeem the property from the Marsh foreclosure and sale, or to advance any money for that purpose. In fact, the contingency of a purchase or redemption could not have been contemplated, for the agreement was entered into on the part of Mathews upon the express understanding and belief, founded upon the representations and promises of T. G. Fladeland, that the Marsh mortgage had not then been foreclosed, and that its satisfaction of record was to be procured by the latter at once and before the loan could be consummated. Aside from that agreement, appellant owed no duty to either of the Fladelands or the respondents in respect to the matter. None could arise out of the fact that he had been fraudulently deceived into taking a mortgage upon the property from J. G. Fladeland, in ignorance of the character of his title and of the equities of the respondents, or out of the fact that afterwards, and before procuring the assignment, he became informed of the truth of the matter. The assignment which he purchased and took to himself in no way prejudiced the respondents. It did not prevent them from

redeeming from the sale on the Marsh foreclosure, nor embarrass them in the least in the exercise of that right. They could have redeemed as well after the assignment as before. As this right of redemption was the only interest they had in the land as the judgment creditors of T. G. Fladeland, it is evident they have suffered no loss or injury from the assignment.

It is suggested by respondents, as a ground of liability, that appellant acted in bad faith towards them in failing to advise them of the fraudulent character of the conveyance from their debtor to J. G. Fladeland, upon learning the facts in relation thereto, and in secretly taking advantage of such knowledge, and of his position as a mortgagee of the latter, to obtain an assignment to himself of the certificate of sale from Marsh. Upon the facts found by the referee, it is impossible to see wherein the appellant has violated any rule of law, or of morals even, in any act done or omitted to be done by him in the transaction. He had no relations with respondents, arising out of any agreement or otherwise, that made it his duty to volunteer any information to them concerning the transfer from T. G. to J. G. Fladeland, or which prevented him from acting upon whatever knowledge he had in protecting his own interests; and certainly Iverson has no cause for complaint in this regard, for it appears that, at the time of the negotiations between Mathews and the Fladelands, at which he was present, he understood they were being conducted upon the basis that T. G. Fladeland was the actual and beneficial owner of the property, though the legal title was in J. G. Fladeland, and yet he kept silent, and did not inform Mathews that such title was fraudulent as against himself and the other respondents, as the creditors of T. G. Fladeland. The complaint that appellant procured the assignment secretly, or by means of his position as a mortgagee of the fraudulent grantee, is wholly without support in the findings. He acted openly and independently as a purchaser of the Marsh title, and at once put the assignment

upon record, thereby notifying the public of his claims; and, as this occurred more than two months before the period for redemption expired, respondents had ample opportunity and time to redeem if they so desired.

Respondents make the further point that inasmuch as appellant, in making the purchase of the Marsh title, with knowledge of all the facts, used $975 of the money which he had agreed to loan to T. G. Fladeland, but retained at the time he received the notes and mortgage from J. G. Fladeland, he is, therefore, liable; because, not having rescinded the agreement, that money became a trust fund in his hands for the benefit of the creditors of T. G. Fladeland, from the moment he received notice of the fraudulent character of the deed to J. G. Fladeland. This point rests, of course, either upon the proposition that said money was paid on account of that agreement, or that the debtor of respondents was legally entitled to it. Neither of these propositions is sustained by the facts found by the referee. It is expressly found that the sum or "balance of $975 was never paid or delivered by Mathews to the Fladelands, or either of them, or to any other person for them or either of them," and that "he made the purchase and took the assignment without their knowledge or consent, intending thereby to secure the title to the land in himself." It cannot, therefore, be claimed that he paid the money on account of that agreement, or in recognition of any liability under it. By the express terms and conditions of said agreement, T. G. Fladeland could have no legal claim upon appellant for the money until the performance by him of the stipulations therein as to procuring the abstract of title to the land, and the satisfaction of the Marsh mortgage; and, by the findings, it appears that those stipulations have never been performed, and that they are incapable of performance. Moreover, the agreement having been obtained from Mathews by fraudulent misrepresentations and promises, it could not be enforced against him, as it appears that he has never done anything under it, nor realized any benefits from it, since the

discovery of the fraud. It follows that said money legally belonged to appellant when he used it in procuring the assignment, and that he was under no legal or equitable obligation in respect thereto to T. G. Fladeland or his creditors.

This disposes of all the points urged in support of the judgment below, which is manifestly erroneous in holding the appellant liable as a trustee in respect to the land in controversy, and it is therefore reversed, and judgment for defendant ordered.