64 273
f67 306

WASHINGTON LOAN AND TRUST COMPANY, Administrator, v. JO-
HANNA McKENZIE and Others.[1]

April 27, 1896.

Nos. 9983—(268).

**Tax Title—Acquisition by Grantee of Mortgagor.**

A mortgagor cannot, as against the mortgagee, acquire a tax title to
the mortgaged premises through a breach of his own covenant to pay the
taxes. And in that respect his grantee stands in no better position than the
mortgagor himself.

**Same—Acquisition of Tax Title by Stranger—Subsequent Purchase
from Mortgagor.**

M. executed a mortgage to W., in which he covenanted to pay all taxes
on the mortgaged premises. M. having defaulted in the performance of
this covenant, the premises were sold for taxes, and purchased by L. Sub-
sequently, but before the time of redemption from the tax sale had expired,
L. obtained a quitclaim deed of the premises from M., under which he im-
mediately went into possession, and thereafter took steps to perfect his
tax title by causing notice to be given of the expiration of the time of re-
demption. No redemption having been made, L., in an action by W. to
foreclose his mortgage, set up his tax title, claiming that it had extinguished
the lien of the mortgage. *Held* that, after purchasing from the mortgagor,
L. was disqualified from acquiring, as against the mortgagee, any new or
additional rights under his inchoate tax title.

**Same—Lien of Holder of Tax Certificate.**

Whether, in view of the fact that he acquired his tax-sale certificate be-
fore he owed the mortgagee any duty to protect the land from taxes and
tax sales, equity would not keep it alive, as a lien superior to plaintiff's
mortgage, for the amount required to redeem from the tax sale, quære.

Appeal by defendants Lynott and Ballard from a judgment of
the district court for St. Louis county in favor of plaintiff, entered
in pursuance of the findings and order of Morris, J. Affirmed.

*William C. White*, for appellants.

*Stanford & Arbury* and *S. T. & Wm. Harrison*, for respondent.

MITCHELL, J. In February, 1889, the defendants McKenzie,
as security for the payment of $1,200 and interest, executed to

[1] Reported in 66 N. W. 976.

64 M.—18

plaintiff a real-estate mortgage containing a covenant, among others, that the mortgagors would pay all taxes on the mortgaged premises. They failed to pay the taxes for 1889, and by reason of such default the premises were sold therefor in May, 1891, and bid in for the state. In April, 1893, one Speyers paid into the county treasury the amount for which the premises had been sold, together with all subsequent taxes, penalties, etc., and obtained from the county auditor an assignment of the interest of the state, as authorized by statute. In May, 1894, Speyers assigned the auditor's certificate to other parties, who, in turn, assigned it to defendant Lynott, in August, 1894. On November 26, 1894, the McKenzies, the mortgagors, for the consideration of $100, executed to defendant Lynott a quitclaim deed of the premises, under which he immediately entered into, and still continues in, possession. It does not appear that this quitclaim deed contained any exceptions or covenants, or made any mention of either the mortgage, or the taxes on the land. Almost immediately after the execution of this quitclaim, Lynott caused notice to be given of the expiration of the time of redemption from the tax sale; the notice being served on the defendant Johanna McKenzie, in whose name the premises were assessed. No redemption was made, and, a few days after the expiration of the period for redemption, Lynott executed a mortgage to the defendant Ballard to secure payment of $2,000. All the conveyances and instruments above referred to were duly recorded in the order of their execution.

In this suit to foreclose plaintiff's mortgage, the defendants Lynott and Ballard insist that it is no longer a lien on the premises, having been extinguished by the tax title. Ballard's rights as mortgagee are, of course, dependent upon Lynott's title; and the question is whether, under the circumstances, Lynott was in a position to acquire a tax title, so as to defeat plaintiff's mortgage.

There are certain classes of persons, who, from their connection with the title to real estate, or in consequence of their relations to others having an interest in the property, are disqualified from purchasing the land at a tax sale. This rests, not on anything peculiar to the law of tax sales, but upon certain broad and general principles of equity, the fundamental one being that a person will not be permitted to acquire any right founded on his own default

or neglect of duty. In supposed accordance with this principle, it had been frequently, if not generally, held that the owner in possession, and who therefore owed to the state the duty of paying the taxes, could not fortify his existing title, or acquire a better one, by allowing the land to be sold for taxes, and buying it at the sale. As this duty is one due only to the state, it is difficult to see why it is against equity to allow the owner of the land to acquire a tax title to it, as against one to whom he owes no such duty. This question has been set at rest by our statute, which provides that, "if the owner purchase, the sale shall have the effect to pass to him   *   *   *   every right, title and interest of any and every person, company or corporation, free from any claim, lien or incumbrance except such right, title, interest, lien or incumbrance as the owner so purchasing may be legally or equitably bound to protect against such sale or the taxes for which such sale was made." G. S. 1894, § 1599. While the owner, merely as such, is no longer disqualified from purchasing at a tax sale, the question whom and what interests he is legally or equitably bound to protect against taxes and tax sales remains to be determined by the same principles of equity as before the enactment of the statute.

Whether there are any circumstances under which the mortgagor can acquire a tax title, as against his mortgagee, it is not now necessary to consider, but it is elementary that he cannot acquire or build up a tax title upon a default in or breach of the conditions or covenants of his own mortgage. Allison v. Armstrong, 28 Minn. 276, 9 N. W. 806. Hence the McKenzies, who covenanted to pay the taxes, could not themselves have acquired a tax title, so as to defeat plaintiff's mortgage. It is equally well settled that, where the mortgagor cannot do so, no one claiming under him can do it. His grantee will stand in no better position than the mortgagor himself. MacEwen v. Beard, 58 Minn. 176, 59 N. W. 942. The fact that he may not have expressly covenanted to pay the taxes, and may not be personally liable for their payment, would make no difference.

Defendants' counsel concede that, if Lynott's tax title had had its inception after he purchased from the mortgagors, the case last cited would be decisive of the present; but they seek to distin-

guish the cases, in that Lynott obtained an assignment of the auditor's certificate while he was still a stranger to the title of the mortgagors and mortgagee, and owed no duty to either to protect their interests against taxes and tax sales. Undoubtedly Lynott was at that time qualified to acquire a tax title, as against the plaintiff; and, if his relations to the parties and their title had remained unchanged, he could unquestionably have perfected his inchoate tax title, so as to extinguish plaintiff's mortgage. But the vital and pivotal fact in the case is that before the tax title had become absolute, and while certain steps remained to be taken to make it such, and while the auditor's certificate constituted a mere lien on the land, Lynott changed his relations to the title and to the plaintiff, by purchasing from, and going into possession under, the mortgagors. From that moment he became disqualified to acquire a tax title, as against the plaintiff. In accepting a quitclaim deed, he purchased the land subject to the existing lien for taxes. As between him and his grantors, the duty of paying these taxes devolved on him. By thus relieving the mortgagors from their payment he assumed the duty himself. If, at the time of this purchase, the tax-sale certificate had been outstanding in a third party, he could not, by purchasing it, have acquired a tax title, as against plaintiff. His purchase would, as to plaintiff, have been held to operate as a redemption. But there is no difference in principle between buying in an outstanding tax title, and perfecting an inchoate one which he already held. From the moment he became the grantee of the mortgagors, he became disqualified from acquiring any new or additional rights under any tax title. He was thereafter equitably bound to protect plaintiff's mortgage from taxes and tax sales.

Whether, in view of the fact that he acquired the tax certificate before he owed any such duty, equity would not keep it alive as a lien, superior to plaintiff's mortgage, for the amount required to redeem the land from the tax sale, is a question which has not been raised or discussed, and which we therefore do not consider. But, after defendants' purchase from the mortgagors, he could acquire no new or additional rights, as against the plaintiff.

Judgment affirmed.