AMERICAN BAPTIST MISSIONARY UNION v. A. W. HASTINGS and Others.[1]

January 27, 1897.

Nos. 10,318—(241).

**Mortgage—Right to Acquire Tax Title.**

*Held*, following Washington L. & T. Co. v. McKenzie, 64 Minn. 273, that the grantee of a mortgagor, who has covenanted to pay the taxes on the mortgaged premises, whether he is the immediate or remote grantee, or whether he gets his title by deed or through a second mortgage, is disqualified from acquiring and holding a tax title to the mortgaged premises, as against the mortgagee.

**Reimbursement for Taxes.**

*Held*, upon the special facts of this case, that equity did not require that the plaintiff should reimburse the grantee of its mortgagor for the amount paid by him for certain tax certificates of sale of the mortgaged premises.

**Taxes—Payment under Protest.**

The plaintiff herein paid certain money, under protest, to the county treasurer in redemption of the mortgaged premises from tax sales, the certificates whereof were held by a grantee of his mortgagor, but whose relation to the plaintiff's title did not appear of record. *Held*, following Joannin v. Ogilvie, 49 Minn. 564, that such payment was not a voluntary one.

[1] Reported in 69 N. W. 1078.

Appeal by defendant Weeks from an order of the district court for Hennepin county, Belden, J., denying a motion to dissolve a temporary injunction. Affirmed.

*Geo. D. Emery*, for appellant.

Weeks was simply a creditor having a lien, hence he could lawfully acquire an adverse tax title. Wilson v. Jamison, 36 Minn. 59, 29 N. W. 887; Allison v. Armstrong, 28 Minn. 278, 9 N. W. 806; Blackwood v. Van Vleit, 30 Mich. 118; Reimer v. Newel, 47 Minn. 237, 49 N. W. 865. Weeks was not an assign of the mortgagor. Cuilerier v. Brunelle, 37 Minn. 71, 33 N. W. 123; Nopson v. Horton, 20 Minn. 238 (269). Weeks, not being in possession and not having assumed any contractual duty toward the prior mortgagee, could not be required to pay the taxes. MacEwen v. Beard, 58 Minn. 176, 59 N. W. 942; Washington L. & T. Co. v. McKenzie, 64 Minn. 273, 66 N. W. 976; Connecticut M. L. I. Co. v. Bulte, 45 Mich. 113, 7 N. W. 707.

*Shaw, Cray, Lancaster & Parker*, for respondent.

The cases cited by appellant are not directly in point. The following cases are conclusive against appellant's first point. Manning v. Bonnard, 87 Iowa, 648, 54 N. W. 459; Washington L. & T. Co. v. McKenzie, 64 Minn. 273, 66 N. W. 976. See MacEwen v. Beard, 58 Minn. 176, 59 N. W. 942; Avery v. Judd, 21 Wis. 262; Smith v. Lewis, 20 Wis. 350.

START, C. J. This is an appeal by the defendant C. W. Weeks from an order of the district court of Hennepin county denying his motion to dissolve a temporary injunction, issued herein, restraining the defendant Cooley, as auditor of such county, from issuing a warrant to the defendant Weeks for the payment of the sum of $790.03, paid to the treasurer of such county by the plaintiff in redemption of certain land from tax sales, the certificates whereof were held by Weeks.

The material facts, as alleged in the complaint, and for the purposes of this appeal taken as true, are these: On June 14, 1889, William H. Barber was the owner of four lots in the city of Minneapolis, and on that day executed a mortgage on the lots to the plaintiff, to secure the payment of $20,000 in five years, with interest

payable semiannually. The mortgage was duly recorded, and contained a covenant by the mortgagor to pay all taxes levied on the mortgaged premises. Afterwards, and on June 24, 1889, Barber duly conveyed the lots to Albert S. Munger; and on the same day Munger conveyed them to J. H. Duffus. Each of these conveyances was by deed, in which it was expressly provided that the premises were conveyed subject to the plaintiff's mortgage. On June 27, 1889, Duffus executed a mortgage on the lots to the plaintiff's mortgagor, William H. Barber, to secure the payment of $10,000 and interest, who, on August 30, 1889, sold his mortgage (which was duly recorded) and the debt thereby secured to the defendants Cole and Weeks, as co-partners; but the assignment was taken for their benefit and use, in the names of Ward P. and Lizzie Shattuck. March 6, 1890, action was brought in the names of the Shattucks to foreclose this second mortgage; and the lots were sold pursuant to the decree to the Shattucks, and the sale confirmed by the court, July 18, 1891.

The taxes on the lots for the year 1889 became delinquent June 1, 1890, and on May 6, 1891, the lots were sold for such taxes to the state for the sum of $492.77; and May 26, 1891, Cole & Weeks purchased the tax certificates on such sale from the state, taking the assignment to C. W. Weeks. There was no redemption from the foreclosure sale on the junior mortgage, and on July 18, 1892, Cole & Weeks, as the beneficial owners, by virtue of such foreclosure, took possession of the lots, and so remained in possession thereof until December 17, 1895, and during all that time collected and received the rents and profits thereof, amounting in the aggregate to several thousand dollars, and paid the plaintiff from time to time the interest on its mortgage up to June 1, 1894, and paid the taxes levied on the lots during their possession thereof, except those for the year 1894. The plaintiff's mortgage was duly foreclosed by advertisement on December 17, 1894, and the lots sold to it for the amount of its mortgage and costs. No redemption was made from this sale.

The defendant Weeks, for Cole & Weeks, on November 26, 1895, caused notices of expiration of the time to redeem the lots from the tax sale for the taxes of 1889 to be served on their own tenants, who were in possession of the premises; and proof of the service of the notices was filed in the office of the county auditor on December 5, 1895. The plaintiff took possession of the premises December 17,

67 M.—20

1895. The plaintiff had no knowledge that the notices of the expiration of the time to redeem had been issued, or that Cole & Weeks had not paid the taxes for 1889, or that either of them claimed any right or lien on the lots by reason of such tax sales until January 11, 1896. Neither Cole nor Weeks appear from the records to ever have had any interest in the lots except the assignment from the state of the tax certificates to Weeks, who appears upon the record to be a stranger to the plaintiff's title. Thereupon the plaintiff, to protect its title, paid under protest, on February 1, 1896, to the defendant Hastings, as county treasurer, the amount necessary to redeem from the tax sales, and thereby procured a cancellation of the certificates, and brought this action to recover the amount so paid, $790.03, and to restrain the defendant Cooley from issuing a warrant to Weeks for the amount.

The appellant, on these facts, claims: First. That he had a legal right to purchase at tax sale the mortgaged premises, and hold the tax title if no redemption was made, so as to defeat plaintiff's title derived through its mortgage. Second. If this be not so, still the plaintiff is bound in equity to reimburse him for the amount paid to protect the title from the paramount claim of the state for taxes. Third. That the plaintiff's redemption from the tax sales was a voluntary payment. If any one of these claims is valid, when tested by the record on this appeal, then the trial court erred in denying the motion to dissolve the injunction.

1. The first claim of the appellant is determined adversely to him by the decision of this court in the case of Washington L. & T. Co. v. McKenzie, 64 Minn. 273, 66 N. W. 976. When Cole & Weeks took an assignment of the tax certificates in the latter's name, they were, in fact, the owners of the second mortgage, which was in process of foreclosure; and, by virtue thereof, they became the beneficial owners of the mortgaged premises, subject to the plaintiff's mortgage. When Cole & Weeks became such owners of the property, they, or the Shattucks for them, held precisely the same title which the plaintiff's mortgagor, Barber, had after he gave the first mortgage, and therein covenanted to pay the taxes on the premises. Barber's title, subject to plaintiff's mortgage, passed to his immediate grantee, Munger, from him to Duffus, from him to Barber, as mortgagee in the second mortgage, and from him to Cole & Weeks,

by assignment of the second mortgage to the Shattucks for their use and benefit.   They were such owners of the premises, and in possession thereof, when they attempted to perfect their alleged tax title, by causing notices of expiration of time for redemption to be issued and served.   As the grantees of Barber, they could not acquire and hold a tax title to the mortgaged premises, as against plaintiff's mortgage.   The fact that they were the remote, instead of immediate, grantees of Barber, does not distinguish this case from the case of Washington v. McKenzie, supra.

2. As to the appellant's second claim, it may be conceded that the burden was on the plaintiff to show that it would be inequitable to permit Cole & Weeks to retain the tax certificates as security until reimbursed the amount paid for them, for the reason the plaintiff's title was thereby protected against the paramount claim of the state for taxes, for the payment of which they were not personally bound. But, if this be so, still the complaint alleges facts sufficient to make a prima facie case in this particular, which, being admitted, shifts the burden upon Cole & Weeks to show that, in equity, they ought to be so reimbursed.   They were in possession of the mortgaged premises for three years and five months, and received the rents and profits therefrom, amounting in the aggregate to several thousand dollars, a sum largely in excess of the sum paid by them for the tax certificates.   They paid no interest on plaintiff's mortgage or taxes on the premises for more than a year before they surrendered possession of the premises to the plaintiff.   Equitably, they ought to have applied so much of the rents and profits as was necessary to the payment of all taxes and tax liens on the premises; and not have permitted the accumulation of interest on their certificates; and equity will regard that done which ought to have been done, and treat the tax certificates as paid from the rents and profits coming to the hands of Cole & Weeks, in the absence of any other equitable considerations.

3. The plaintiff's redemption from the tax sales was not a voluntary payment.   The defendant Weeks appeared upon the records to be a stranger to the title of the plaintiff; hence he appeared on the records to be the owner of an inchoate tax title, which would become absolute as to all the world in a few days, unless a redemption was made.   There was no time left to the plaintiff in which to commence

an action, and make proof of the extrinsic facts showing that, as against the plaintiff, Weeks was disqualified to acquire such absolute title to the premises by virtue of such tax sales and certificates. There was, then, but one way left for the plaintiff to prevent a cloud upon its title, and that was to do just what it did do,—redeem and pay the money under protest. The plaintiff was not bound to permit a cloud to be placed on its title, and take its chances of being able to establish the extrinsic facts entitling it to have the cloud removed by the judgment of a court of equity at the end of a law suit, leaving its title clouded pending the litigation. The rule that money voluntarily paid cannot be recovered back is a wholesome one, but in its application injustice is too frequently done. The subject was fully considered by this court in the case of Joannin v. Ogilvie, 49 Minn. 564, 52 N. W. 217. The case cited is decisive of the one at bar, on the point now under consideration.

Order affirmed.