AMERICAN BAPTIST MISSIONARY UNION v. A. W. HASTINGS and Others.

June 9, 1898.

Nos. 10,973—(101[1], 12[2]).

Mortgage—Covenant to Pay Taxes—Conveyance Subject to Mortgage—Second Mortgage to Mortgagor—Tax Certificate Bought by Assignee of Second Mortgage in Possession.

> B. executed to plaintiff a mortgage, in which he covenanted to pay all taxes on the mortgaged premises. He then conveyed the premises to D., subject to the mortgage, which the grantee assumed and agreed to pay. D. executed a mortgage back to B., who assigned it to defendant W. The latter went into possession as mortgagee in 1890, and continued in possession as such until July, 1892, after which he continued in possession as owner, under title acquired by foreclosure of his mort-

---

[1] April, 1898, term.                    [2] October, 1898, term.

gage, until December, 1895, when he surrendered possession to plaintiff, which had become owner under a foreclosure of its own mortgage. While in possession as mortgagee in 1891, defendant W. took a state assignment certificate under a sale of the mortgaged premises for the taxes of 1889. While in possession as owner, he failed to pay the taxes for the years 1893 and 1894, which plaintiff was compelled to pay after it acquired title under its foreclosure, and which amounted to more than the defendant had paid for the assignment certificate for taxes of 1889. *Held*, that defendant W. had no equitable right, as against plaintiff, to hold the tax assignment certificate as security to reimburse himself for the amount paid for the same.

## On Reargument.

### November 14, 1898.

**Same—No Duty of Second Mortgagee to Pay Taxes—He May Hold Tax Title as Security for Reimbursement by First Mortgagee.**

*Held*, reversing the former decision, that defendant W. occupied the position of a second mortgagee, and as such owed the first mortgagee no duty to pay the taxes on the mortgaged premises; that while his purchase, after he went into possession as mortgagee, of the outstanding tax title for taxes of 1889, will be treated as only a payment of the tax for the protection of both mortgages, yet, if the first mortgagee avails himself of this protection, he must reimburse him for what he paid for the tax title; and the second mortgagee may hold such title as security for his reimbursement, it appearing that he had expended more than the amount of the rents and profits received by him in payment of interest on the first mortgage, and for improvements and repairs necessary for the protection and preservation of the mortgaged premises.

**Same—Failure to Pay Subsequent Taxes—Equity.**

Also, that his equitable right to hold this tax title as security for his reimbursement was not extinguished by his failure to pay the taxes on the premises which accrued after he became owner (subject to the first mortgage), it appearing that he had expended for the protection and preservation of the premises more than all the rents and profits received by him up to the time he surrendered possession to the plaintiff as purchaser at a foreclosure sale of its own mortgage, including interest paid on the first mortgage (which he was under no obligation to pay), far in excess of the amount of such taxes.

Action in the district court for Hennepin county against A. W. Hastings, as treasurer, C. R. Cooley, as auditor, of said county, and C. W. Weeks to recover the sum of $790.03 paid by plaintiff to de-

fendant Hastings to redeem from a tax sale. The case was tried before McGee, J., who found in favor of plaintiff. Judgment was entered that plaintiff recover of defendant Hastings, as treasurer, the sum demanded, that defendant Weeks had no right thereto, and that defendant Cooley, as auditor, be enjoined from issuing to defendant Weeks a warrant for the payment of said sum. From this judgment defendant Weeks appealed. Reversed upon reargument.

*Geo. D. Emery*, for appellant.

If plaintiff would avail itself of the protection afforded by defendant's purchase of the tax title, equity requires that it should reimburse defendant for the amount paid. American Baptist M. U. v. Hastings, 67 Minn. 303; Pratt v. Pratt, 96 Ill. 184; Hogg v. Longstreth, 97 Pa. St. 255; Silver Lake v. North, 4 Johns. Ch. 370; Roeder v. Keller, 135 Ind. 692; Connecticut v. Stinson, 62 Ill. App. 319; Connecticut v. Bulte, 45 Mich. 113; Garrettson v. Scofield, 44 Iowa, 35. If the senior mortgagee wants the benefit of the protection thus afforded, he must tender the amount of the tax and interest. Fiacre v. Chapman, 32 N. J. Eq. 463; Ten Eyck v. Craig, 2 Hun, 452; McLaughlin v. Green, 48 Miss. 175, 209; Abbott v. Union, 127 Ind. 70; Bowman v. Cockrill, 6 Kan. 311, 332; Stubblefield v. Borders, 92 Ill. 279. A junior mortgagee, in an accounting for rents collected by him, is allowed necessary improvements, which go to increase the value of the estate, as well as necessary repairs. He is not held strictly to prove the necessity of such improvements. Seaver v. Cobb, 98 Ill. 200; Wells v. Van Dyke, 109 Pa. St. 330; 2 Jones, Mort. §§ 1129–1134; Hubbell v. Moulson, 53 N. Y. 225; Sidenberg v. Ely, 90 N. Y. 257. If plaintiff is to have the benefit of the payment, it must do equity. Moore v. Wayman, 107 Ill. 192; Williams v. Townsend, 31 N. Y. 411.

*Russell, Cray & Jamison*, for respondent.

Defendant could not acquire title to the lands, or lawfully claim the money required to redeem from a tax claim held by him which he and his predecessors and grantors should have paid. Washington L. & T. Co. v. McKenzie, 64 Minn. 273; American Baptist M. U. v. Hastings, 67 Minn. 303. It was the duty of those taking under the mortgagor to pay the taxes. This is not a case for an account-

ing for equities between the first mortgagee and the second mortgagee and the subsequent owner thereunder. Defendant was interested as mortgagee in possession on May 26, 1891, when he took an assignment of the certificate of tax sale, and is not in a position to claim a lien for the amount so paid. Washington L. & T. Co. v. McKenzie, supra.

MITCHELL, J.

This case was here on a former appeal. 67 Minn. 303, 69 N. W. 1078. Stated according to their legal effect, the facts found on the subsequent trial on the merits were as follows:

In June, 1889, one Barber mortgaged certain premises to plaintiff, covenanting to pay all taxes. Shortly afterwards Barber conveyed the premises to one Munger, subject to the mortgage, which the grantee assumed and agreed to pay. A few days later Munger conveyed to one Duffus, subject to the mortgage, which the grantee assumed and agreed to pay. Shortly afterwards Duffus executed a mortgage to Barber, plaintiff's mortgagor. Barber assigned this mortgage to the defendant Weeks. March 27, 1890, Weeks went into possession as mortgagee. May 26, 1891, Weeks took from the state an assignment certificate for the taxes of 1889, the amount paid therefor being $492.77. July, 1891, Weeks foreclosed his mortgage by action, bid in the property for the amount of principal and interest due thereon, and the sale was confirmed. July, 1892, the redemption on Weeks' foreclosure having expired, and there having been no redemption, he became owner in fee, subject to plaintiff's mortgage. December 17, 1894, plaintiff foreclosed, and bid in the property for the amount of the principal and interest due on its mortgage. December 17, 1895, there having been no redemption from plaintiff's foreclosure, it became owner of the premises, and Weeks surrendered the possession to it.

Weeks, while in possession, did not pay the taxes for 1893 and 1894, amounting to $789.81, which plaintiff was compelled to pay after it acquired absolute title under its foreclosure. It will be noted that these taxes accrued, not while Weeks was in possession as mere mortgagee, but while he was in possession as owner from July, 1892, to December, 1895. In February, 1896, plaintiff, under protest, redeemed from the sale for taxes of 1889 (for which Weeks

had an assignment certificate), and then brought this action to recover the money. Weeks claims the right to it to reimburse himself for what he paid to the state for the certificate. What Weeks paid out, while in possession as mortgagee and as owner, for repairs, improvements, and taxes for 1890, 1891, and 1892 on the premises, amounted to as much or more than all that he received for rents and profits during the same period.

1. Conceding, without deciding, that if Weeks' mortgage had been executed by Barber, he would have had an equitable right as against plaintiff to hold the assignment certificate for the taxes of 1889 as security for what he had paid out; and conceding, without deciding, that this right would not have been affected by his going into possession as mortgagee, except to the extent that he would be compelled to account for the rents and profits,—still there are conclusive reasons why he has no such right under the facts of this case. The mortgage under which he claims was executed, not by, but to, Barber, who was plaintiff's mortgagor, and who had expressly covenanted in the mortgage to pay all taxes on the premises. In the face of his own covenant, Barber would not be allowed to hold the assignment certificate, even as security for what he had paid for it; and Barber could not, by assigning the mortgage, give his assignee any greater rights than he himself had. Weeks stands exactly in the shoes of his assignor, Barber.

2. After the redemption period on Weeks' foreclosure expired in July, 1892, he became absolute owner of the premises, and held precisely the same title and bore the same relation to them and to the parties interested in them as if he had taken an absolute deed immediately from Barber. While he may not have been personally liable to plaintiff to pay the current taxes on the premises, yet as owner in possession he equitably owed the duty to do so both to the state and to the plaintiff. During two of the years while he was thus in possession as owner he failed to pay the current taxes, which plaintiff was afterwards compelled to pay, amounting to more than Weeks had previously paid for the taxes of 1889. Therefore assuming, without deciding, that he had originally an equitable right to be reimbursed for the taxes of 1889, this equity was destroyed by his subsequent failure to pay the current taxes for

1893 and 1894. If there appears to be anything inequitable in the result to which this leads, it is but the consequence of the peculiar relation to the title which Weeks voluntarily assumed. Plaintiff is still out of pocket by reason of the default of Barber and those claiming under him.

While all of the foregoing facts may have appeared in the record on the former appeal, yet neither of the grounds upon which we now base our decision was specifically urged by counsel, nor was either brought to the attention of the court or passed upon by it. Neither was there anything decided on the former appeal, so as to become the law of the case, inconsistent with the views now expressed. The first part of the former opinion merely decided that Weeks' relationship to the property and the parties was such that he could not acquire a tax title as against the plaintiff. The second part, as we construe it, merely held that, assuming, without deciding, that Weeks might have the right to hold the tax assignment certificate as security for what he had paid out, the burden was on him first to account for the rents and profits while he was in possession of the premises.

Judgment affirmed.

START, C. J. (dissenting).

I dissent. I agree with the conclusion of the court that the decision on the former appeal does not affect the question presented by this appeal. The relation of Weeks to the property was such that he could not acquire and hold a tax title against the plaintiff. But he was not bound to perform the personal covenant of Barber to pay the taxes. If he had paid the taxes of 1889, instead of taking an assignment certificate therefor, he would have had the right to reimburse himself out of the first money received from the rents and profits of the property; and if he had paid all that he thereafter received from such source for taxes and repairs, the plaintiff would have had no further claim upon him, although he failed to pay all of the taxes accruing during the time he was in possession.

When he took the assignment certificate, he then had the unquestioned right to hold the certificate as security for his reimbursement. Now, when and how has he forfeited this right? This court

says that it was when and because he failed to pay all of the current taxes while he was in possession. But he disbursed every dollar he received for the protection of the property. Will equity enforce a forfeiture because he did not do more? The legal title to the money in question is in him. The plaintiff has not shown a superior equity to it, and his equity must prevail.

BUCK, J. (dissenting).

I also dissent. From the facts found in the record it appears that Weeks had paid out as former mortgagee, on the interest on the prior mortgage, taxes, repairs and other expenditures the sum of $808.78, more than all his receipts and profits from the premises. The taxes for 1889 were levied upon said premises subsequently to the time when the Barber mortgage was executed to plaintiff, and consequently such payment was beneficial to the plaintiff as mortgagee. This is true also of the interest and taxes paid by Weeks as well as the necessary repairs and improvements made by him on the premises. While these payments operated for the protection of Weeks himself, especially the purchase of the tax title assessed for 1889 and due while he was in possession, which he was compelled to pay for his own protection, equity requires that, if the prior mortgagee would avail itself of the protection thus afforded, it should not be permitted to regain possession of the redemption money so paid by it to the county treasurer, but that it should belong to Weeks by way of reimbursement for the taxes paid by him for the taxes levied for 1889. This, we think, is in line with the law as stated in the opinion on the former appeal. 67 Minn. 303, 69 N. W. 1078.

The facts herein, however, are different in some respects from what they there appeared. It did not there, as here, appear that defendant's lawful expenditures were more than $800 in excess of the rents and profits. Now, while a second mortgagee is under no obligation to protect the lien of the first mortgagee by payment of taxes or by purchasing the premises for his benefit at a tax sale, yet, if he does pay or purchase, the act ipso facto constitutes a protection. Connecticut v. Bulte, 45 Mich. 113, 7 N. W. 707. And, if the senior mortgagee wants the benefit of the protection thus afforded,

he must tender the amount of tax so paid.   Fiacre v. Chapman, 32 N. J. Eq. 463.   There is good reason for this rule.   The tax lien in this case was paramount to the lien of the first mortgage, and, if such lien had not been removed by payment of the tax judgment, a title by a sale of the premises thereunder might have ripened into title superior to the lien of the plaintiff's mortgage, and cut off all its rights.   That such payment protected the defendant as well as the plaintiff did not deprive the defendant of this right of equitable subrogation.   The payment was in no sense voluntary.   American Baptist M. U. v. Hastings, 67 Minn. 303, 69 N. W. 1078.

The defendants Hastings and Cooley, as officers of Hennepin county, have no interest in this action.   The treasurer, Hastings, is merely holding the funds for the benefit of the party entitled thereto.   And here it may be noted that plaintiff does not stand in the position of a redemptioner from the defendant's mortgage foreclosure of the second mortgage.

A senior mortgagee is not entitled to redeem from a foreclosure sale made by a junior mortgagee, although he may do so from a tax lien on the premises, and this, too, where it is held by the junior mortgagee.   But this is done, not for the benefit of the junior, but the senior, mortgagee.   In this case the action is merely to recover the taxes which the senior mortgagee paid for its own protection, and which defendant Weeks paid for the protection of both.   That the payment by defendant Weeks was beneficial to plaintiff, there can be no reasonable doubt.   Though Weeks was under no legal obligation to pay the taxes, yet he had the right to do so, and, if such payment inured to plaintiff's benefit, as senior mortgagee, why should such payment not be allowed to stand as against itself? The burden of showing that defendant Weeks had received more rents and profits while in possession of the premises than were sufficient to pay the taxes of 1897, and the other lawful expenditures connected with the use and management of said premises, rested with plaintiff, and this, I think, it failed to do.   Certainly, the fund sued for was a legitimate expenditure for unpaid taxes for that year, and, as such payment operated for the benefit and protection of plaintiff, it ought not to maintain this action for its recovery.   I think the judgment should be reversed.

An application for a reargument having been granted, the case was submitted upon briefs at the October, 1898, term.

*Geo. D. Emery,* for appellant.

Defendant Weeks does not stand in the shoes of his assignor. He was not prevented by any covenants or by law from buying in an outstanding prior lien and thus strengthening his title. Gjerness v. Mathews, 27 Minn. 320; McLaughlin v. Acom, 58 Kan. 514. The prior lien-holder ought to pay for the protection afforded; and, if he wishes immunity from the effect of the tax certificate, he must reimburse the junior lien-holder for the money thus invested. Maxfield v. Willey, 46 Mich. 252, and cases supra. The right to acquire a tax title depends on the absence of any duty in regard to the tax. McLaughlin v. Acom, supra; Swan v. Emerson, 129 Mass. 289. Weeks was under no obligation to pay the tax. He had never covenanted to pay, and the duty was not enjoined on him as owner. 2 Jones, Mort. § 1134. Prima facie Weeks is the legal owner of the certificates, and entitled to the money paid for their redemption. Plaintiff shows no superior equity. He is subrogated to the prior lien of the state. All the cases distinguish between the duty of the mortgagee in possession as to taxes assessed during such possession and as to those assessed prior thereto. These certificates were assessed before Weeks' mortgage was made, and as to it he owed no duty to any one, not even to the state. 1 Jones, Mort. § 713; 25 Am. & Eng. Enc. 269, 270; Ebert v. Gerding, 116 Ill. 216. The court overlooked the fact that up to July, 1892, Weeks was simply a creditor charged with no duty towards the first mortgagee, except to submit so much of the title as he acquired from Duffus to the lien of plaintiff's mortgage. Wilson v. Jamison, 36 Minn. 59; Allison v. Armstrong, 28 Minn. 276. During several years he was in possession in the name of Shattuck, but, as plaintiff alleges, for his own benefit. His possession was notice of his rights, and hence plaintiff bought subject to these certificates, and must have bought with the intention of paying them off. American B. & L. Assn. v. Waleen, 52 Minn. 23; American B. & L. Assn. v. Stoneman, 53 Minn. 212; Pioneer S. & L. Co. v. Freeburg, 59 Minn. 230.

*Russell, Cray & Jamison,* for respondent.

On November 14, 1898, the following opinion was filed:

MITCHELL, J.

A re-examination of this case upon reargument has satisfied us that the reasoning of the former opinion is fallacious.

The first proposition laid down in that opinion is that Weeks stands in the shoes of Barber; that as the latter would not, in the face of his covenant to plaintiff, be permitted either to acquire a tax title, so as to cut out plaintiff's mortgage, or to hold it as security for what he had paid for it, therefore he could not, by assigning the mortgage, give Weeks any greater rights than he himself had. But Barber's duty to plaintiff to protect the land against taxes arose, not by reason of the second mortgage, but by reason of his covenant in the first mortgage, to which Weeks was in no way a party; and when Barber assigned the second mortgage he neither changed his own duties to the plaintiff, nor devolved them upon Weeks. Weeks stood in exactly the same position as if the second mortgage had been executed directly to him either by Barber or by Barber's grantee, Duffus. As such second mortgagee, he owed no duty to the first mortgagee to pay the taxes of 1889. There being no such duty, some cases, for that reason, hold that a second mortgagee may, by purchase at a tax sale, cut off the lien of the first mortgage. Other cases hold, what may be the more just and politic doctrine, that in such case, as in the case of tenants in common, the purchase is only a payment of the tax, which will inure to the protection of both mortgages. But in equity the first mortgagee, if he claims the benefit of this protection, must reimburse the second mortgagee for what he has paid for taxes. This is reasonable and equitable, for taxes constitute a lien paramount to both mortgages, and, if not discharged, will extinguish both. A second mortgagee, as such, owes no duty to the first mortgagee to pay taxes on the mortgaged premises. Connecticut v. Bulte, 45 Mich. 113, 7 N. W. 707; Fiacre v. Chapman, 32 N. J. Eq. 463.

We have not overlooked the fact that when Weeks purchased the state assignment certificate he occupied the position of a mortgagee in possession; nor have we forgotten the doctrine, frequently laid down by the authorities without limitation or qualification, that a mortgagee in possession occupies the same position as the mort-

gagor. This is true for certain purposes, but not for all. It certainly would not be held that a second mortgagee, who had received possession of the mortgaged premises merely as additional security for the payment of his debt, thereby assumed the obligation of the mortgagor to pay the first mortgage. He would undoubtedly have to account for the rents and profits, and would be bound to use them, so far as necessary, for the preservation and protection of the premises including the payment of taxes.

It may be also conceded, without deciding, that he would owe the first mortgagee the duty of paying current taxes that accrue while thus in possession. But in this case the tax of 1889 had become due, and the premises sold therefor to the state, before Weeks went into possession. It appears that he has paid out for interest on plaintiff's mortgage, and for improvements, repairs and taxes (other than those for 1889), on the premises, some $800 in excess of all the rents and profits received by him from the time he went into possession in 1892, down to the time he surrendered possession to the plaintiff in 1895. According to the findings, all these expenditures were reasonably necessary for the preservation and protection of the property. Thus far we see nothing affecting Weeks' equity to hold the tax title as security for what he paid for it.

The second proposition advanced in the former opinion is that, even if Weeks was originally equitably entitled to hold the tax title as security for what he had paid for it, he had lost that equity by reason of his failure to pay the taxes for 1893 and 1894, which accrued after he became owner in fee of the premises (subject to plaintiff's mortgage), and while he was in possession as such owner. If this was all of the case, the conclusion reached would seem reasonable and equitable. But this is only a partial view of the case. The remaining facts are that Weeks had already necessarily expended and paid out for the benefit of the plaintiff, or the protection and preservation of the premises, $800 more than all he had received; and of the amount thus paid out by him over $4,500 was interest on plaintiff's mortgage, which was paid directly to it, and which he was under no legal obligation to pay. He could have retained enough of that money to pay the taxes of 1893 and 1894, but, instead of that, he paid it to the plaintiff, who in turn paid it

to the state.   We fail to see how the fact that he adopted the latter course instead of the former should deprive him of the equity, which he previously possessed, to recover the amount of his prior investment in the tax-assignment certificates.   The legal title to the fund in controversy is in Weeks, and he is entitled to it unless the plaintiff shows a prior and better equity.   The facts do not establish any such equity.   Suggestions are made of some sinister motive on the part of Weeks in pursuing the course which he did, but there is nothing in the findings (which are all we have before us) justifying any such charge.

The order of affirmance in the former opinion is vacated, the judgment reversed, and the cause remanded, with directions to the court below to enter judgment in favor of the defendant upon the findings of fact, unless the court shall, for cause shown, grant a new trial.   It is so ordered.

CANTY, J. (dissenting).

I agree with the majority that the former opinion is fallacious, but it seems to me that their present opinion is equally so.   It seems to me that the second mortgagee in possession stands in the same position as the mortgagor's grantee in possession.   Such mortgagee derives the possession from the mortgagor, and enjoys all the fruits of that possession.   He cannot acquire a tax title, even as against the mortgagor.   Brown v. Simons, 44 N. H. 475; Black, Tax Tit. § 278.   Of course, between the owner and such mortgagee, an accounting must be had, and the amount of the taxes paid by the latter must be allowed in the account.   But I am of the opinion that, as between the first mortgagee and the second mortgagee in possession, the latter is not entitled to reimbursement for taxes paid by him, any more than such a grantee in possession would be.   The decision of the majority will open the door for invasion of the public policy which requires such a grantee to pay the taxes, and disables him from acquiring a tax title.   In my opinion, the order appealed from should be affirmed.