BLANCHE S. TORREYSON, *et vir*, v. MOLLIE DUTTON, *et vir*

188 So. 805.
Division A
Opinion Filed May 16, 1939.
Order Modifying Judgment Filed June 6, 1939.

684

*John L. Early,* for Appellants;

*W. H. Tucker* and *Tom W. Butler,* for Appellees.

BUFORD, J.—Appeal brings for review decree in favor of the defendant in a foreclosure suit.

In short the facts are these:

On May 12, 1926, Mollie Dutton, joined by her husband, Ralph Dutton, made and executed a mortgage to secure the payment of a note of that date due one year after date for the sum of $750.00 to Charles C. Lacey. The mortgage, amongst other things, covenanted:

"That in case this note or any installment of interest is not paid when the same is due and payable, according to the tenor and effect of the note hereinabove described, or in case any tax, lien or assessment which may now be laid or which may hereafted be levied on the same premises, or any part theerof, shall not be paid the same shall become delinquent, then the whole sum of principal and interest remaining unpaid shall, at the option of the owner and holder of the said note and mortgage, without notice be precipitated to maturity, and shall thereupon become due and collectible at once.

"To HAVE AND TO HOLD the above granted and described premises unto the said party of the second part, his heirs and assigns, to his and their own proper use, benefit and behalf, forever. Provided, always, and these presents are

on this express condition, that if the said Mollie. Dutton, her heirs, executors or administrators shall well and truly pay unto the said party of the second part, his heirs, executors or administrators or assigns, the said sum of money represented by the above described note, together with the interest accruing thereon, according to the true intent and meaning of said note, and shall pay all taxes and assessments that are or may be laid upon said premises before the same shall become delinquent, together with all costs, charges and expenses, including a reasonable attorney's fee, which the said party of the second part may incur or be put to in collecting the same by foreclosure or otherwise, that then these presents, and the estate hereby granted, shall cease, determine and be absolutely null and void."

Lacey assigned the mortgage and note to Torreyson. Torreyson assigned the mortgage and note to Douglas. While the mortgage and note were in the hands of Douglas one Nason acquired a tax certificate and on the 23rd day of September, 1931, A. R. Nason filed suit to foreclose the lien of the tax certificate. Douglas was made party to that suit but did not defend it. The suit resulted in decree in favor of Nason. The land was sold to satisfy the decree and master's deed was executed to Nason on December 11, 1931. Thereafter the land was conveyed by Nason and his wife to Lowe on September 7, 1932. The land was conveyed by Lowe and his wife to Mollie Dutton, the original owner, by deed dated March 31, 1937.

On the 22nd day of January, 1938, Douglas re-assigned all his right, title and interest in the mortgage and note to Blanche S. Torreyson, the complainant herein, and thereafter she filed this suit to foreclose the mortgage.

The controlling question involved in this case is, whether or not the defendants Mollie Dutton and her husband could set up the after-acquired title to defeat the foreclosure of

the mortgage executed by them at a time when they held title and which after-acquired title had its origin by reason of the default of the mortgagors in their covenant to pay the taxes levied and to be levied against the property, or, in other words, whether or not when Mr. Dutton reacquired title to the property she took such title subject to her prior mortgage.

It may be stated as elementary law that a tax title acquired by foreclosure of a tax certificate as between the parties was superior to the mortgage and that the sale of the property under foreclosure of the tax certificate was a sale under the paramount lien creating a new and independent title and that such title was thereafter unencumbered by the prior mortgage until it became vested in the mortgagor.

Under the terms of the mortgage, it was the duty of the mortgagor to pay the taxes and not to allow the same to become delinquent. The mortgagor committed a wrong against the mortgagee and against his covenant in the mortgage when he allowed the lands to become delinquent for non-payment of taxes and the wrong in that regard resulted in the destruction of the title under which the mortgage was given.

It is a well settled principle of law that one may not take advantage of his own wrong.

Under the system which obtained at the time of acquiring the tax certificate by Nason he could have pursued either of two courses to acquire a new and independent title. One was to apply for and have issued to him a tax deed based upon the certificate. The other was to foreclose in a suit in Chancery the lien of the tax certificate. Nason chose the latter course but the title resulting was in legal effect the equivalent of the title which would have ensued, had the other course been pursued.

There is no showing in the record that either Nason or any subsequent grantees except Dutton was ever in actual possession of the property. As hereinbefore shown, the deed from Lowe to Dutton was made and recorded March 31, 1937. This suit was filed in February, 1938.

In Jordan v. Sayre, 29 Fla. 100, 10 Sou. 823, it was held:

"A mortgagor, or his grantees of the mortgaged premises, can not set up against the mortgagee, or his assignee, a tax title acquired at a sale for non-payment of taxes which it was the duty of the mortgagor, or those holding under him, to pay."

To the same effect is the opinion in Hughes v. Shayner, 128 Fla. 183, 174 Sou. 400.

In Kane, et al., v. Eustis, 106 Fla. 817, 143 Sou. 655, it was said:

"While in the case before us no obligation rested upon Zimmerman, as a second mortgagee, to pay the taxes on the land for the benefit of the owner, for he was simply a lien holder, and was bound neither by the law nor by his contract to pay the taxes which were the foundation of his after-acquired tax title, yet the land on which his second mortgage was a lien is to be regarded as a common fund for the payment of both the first and second mortgages, which fact entitled either or both of them to redeem from the tax sale, or to accomplish the same result by buying from another the interest, if any, acquired by him under a tax deed procured for non-payment of the taxes accruing against the mortgaged land.

"Under such circumstances equity will not permit one encumbrancer to either directly, or indirectly, acquire a superior title based on a tax deed, during the pendency of his encumbrances as against another encumbrancer under either an equal or superior encumbrance existing on the same property, though the encumbrancer acquiring the tax

title was neither by law nor contract bound to pay the taxes for the non-payment of which the land was sold at tax sale.

"In such cases equity will relieve against the oppression of an asserted superior tax title, whether acquired directly or indirectly, by a second mortgagee, on the principle, that, as between encumbrancers, such an act in seeking to acquire a superior title, rather than redeem from the taxes, is to be regarded as fraudulent in effect, and, therefore, inequitable. Fair v. Brown, 40 Iowa 209."

In Batten v. Woods, 27 W. Va. 58, it was held:

"One, whose duty it was to pay the taxes on land cannot gain advantage in respect to the title, by allowing the land to be sold for taxes and buying it in himself or buying it from a stranger, who bought it at the sale. Coppeye v. Rice, 33 Cal. 408, Mays v. Shear, 25 Cal. 45, Garwood v. Hastings, 38 Cal. 217."

In that case the Court also held:

"If one of several tenants in common purchase the land held in common at a tax sale or from a stranger, who bought it at such tax sale, such title so acquired will enure to the benefit of all the tenants in common. Floyd v. Lynch, 28 Pa. St. 419, Maul v. Rider, 51 Pa. St. 377, Page v. Webster, 8 Mich. 363, Bullin v. Rider, 51 Pa. St. 377, Page v. Webster, 8 Mich. 363, Bullin v. Porter, 13 Mich. 292, Dubois v. Carysan, 24 Mich. 360, Baker v. Whitnesy, 3 Summ. 475, Downes v. Smith, 38 Vt. 464."

The Court cites Cooly on Taxation, page 315:

" 'There is a general principle applicable to such cases; that a purchase made by one, whose duty it was to pay the taxes, shall operate as payment only. This principle is so universal and is so entirely reasonable as scarcely to need the support of authorities to show the existence and the disqualification is made out in every instance.' "

In Washington Loan & Trust v. McKenzie, 64 Minn. 273, 66 N. W. 976, it was held:

"Whether there are any circumstances under which the mortgagor can acquire a tax title as against his mortgage it is not now necessary to consider, but it is elementary that he cannot acquire or build up a tax title upon a default in or breach of the conditions or covenants of his own mortgage."

To like effect is Bourquin v. Bourquin, 120 Ga. 115, 47 S. E. 639.

The same principles should be applied in a case like that here under consideration as are applied where an owner in possession executes a first mortgage and later executes a second mortgage with covenant to pay the first mortgage and thereafter suffers the foreclosure of the first mortgage, the purchase of the property by a stranger at foreclosure sale, and afterwards acquires the title under conveyance' from one deraigning his title from the master's deed at the foreclosure sale. The foreclosure under such first mortgage would abolish the lien of the second mortgage on the property in favor of any subsequent purchaser who was not the original mortgagor, but when such original mortgagor acquires title deraigned from such foreclosure sale then he takes that title subject to the second mortgage. In Levy v. Winfree, Tex. Civ. App. 99 S. W. (2nd) 1043, in considering a case of that sort, the court said:

"Where property is subject to a first lien and a second lien, and there is a foreclosure of the first lien, notwithstanding such foreclosure is effective for the time being to cut off the second lien, if the original owner of the property, who executed the notes evidencing both liens and the deeds of trust securing both liens, subsequently, by purchase from the purchaser at the foreclosure sale, re-acquires title to the property, the property, upon such re-acquisition of title

thereto, again becomes subject to the original second lien." We hold that no greater or different title passed by reason of the foreclosure of the tax lien evidenced by a certificate than that which would have passed by a valid tax deed under the certificate. If a valid tax deed had been applied for and had been issued under the certificate, the grantee of the tax deed would have thereby acquired a compelte, new, independent grant from the sovereignty which, would have barred or extinguished all prior titles and encumbrances of private persons and all equities arising out of them. See Hefner v. Northwestern Mutual Life Insurance Co., 123 U. S. 748, 31 L. Ed. 309, and cases there cited; 61 C. J. 290, Sec. 1795. But while such new and independent title results from the issuance of a valid tax deed, or from the foreclosure of a tax sale certificate, such new and independent title becomes ineffectual when it is again vested in a mortgagor whose mortgage remains outstanding and unsatisfied and the encumbrance is revived by such reacquisition of title. Especially must this be true where the genesis of the newly acquired title finds basis in the default of the mortgagor to respect and abide by the covenants contained in his mortgage.

·For the reasons stated, the decree must be reversed with directions that a decree be entered in favor of the complainants.

It is so ordered.

TERRELL, C. J., and THOMAS, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

Justices WHITFIELD and BROWN not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.

692

## Motion to Modify Judgment

PER CURIAM.—This cause comes on to be heard on motion to modify the judgment entered herein on the 16th day of May, 1939.

The premises considered, it is ordered that the judgment be modified to read,

For the reasons stated, the decree must be reversed with directions that a decree be entered in favor of the complainants, unless it shall be made to appear to the court below that a third party in interest should be allowed to intervene and establish his rights in the rem, in which event the lower court may allow intervention and adjudicate the right between the intervenor and the party prevailing in this appeal.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.