[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 357 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 358 
Two actions are pending in the Chancery Division of this court between the same parties concerning the same realty, involving related questions of law and fact. The plaintiffs in one action are defendants in the other. One is for foreclosure of a mortgage; the other, for foreclosure of a tax sale certificate. Four motions have been made with respect to the proceedings, three by the mortgagees, viz.: for consolidation of the actions, for trial of the mortgage foreclosure suit first and for leave to amend the complaint. The tax sale certificate holders move for summary judgment in their favor on the ground of the legal insufficiency of the complaint for the foreclosure of the mortgage, which motion will be dealt with first.
The following facts appear from the pleadings and from the affidavit filed on behalf of the tax sale certificate holders in support of the motion for summary judgment. The premises in question commonly known as No. 216 Market Street, Newark, New Jersey, are encumbered by a mortgage for $75,000 dated May 28, 1920, duly recorded, now held through *Page 359 
assignment by Barry, Inc., and Geda Corporation, plaintiffs in the mortgage foreclosure action, and alleged to be in default by reason of nonpayment of taxes and interest. In December, 1945, the City of Newark sold the premises to the defendants Eleanor S. Werbel, David Wasserman and Dorothy Goldfinger for unpaid taxes for the years 1938 to 1944, amounting to $24,386.51, subject to redemption at the rate of 4 7/8 per cent. per annum, and the municipality issued a tax sale certificate to the purchasers. Thereafter, the tax sale certificate holders entered into negotiations with the owners of the property for the acquisition of the title and a price of $11,500 was agreed upon. Their object in desiring to acquire the title, they declare in their affidavit, was to enable them to exercise the rights of owner in possession; "to acquire the legal right to the rents of the property;" and to avoid a merger of their tax sale estate into the fee, they caused a limited partnership association to be organized, known as Baf, Limited, using "dummies" for that purpose. They paid the consideration to the then owner of the fee, Moe Rich, Inc., which on April 9, 1947, conveyed the premises in fee simple to Baf, Limited. The deed recited "This conveyance is made subject to * * * the lien resulting from tax sale, mortgage and all other liens and encumbrances." After the delivery of the deed, Baf, Limited, entered into possession and thereafter collected the rents, until the appointment of a rent receiver in the instant matter.
The defendants in the mortgage foreclosure action, Baf, Limited, the owner of the fee, and Werbel, Wasserman and Goldfinger, the tax sale certificate holders, who admittedly are one and the same group of persons, claim to have been acting in two separate and distinct capacities — one as owner of the fee and the other as holders of the tax sale certificate. They claim to have collected the rents in the capacity of owner and that, as such, they were under no obligation to pay the taxes, but had a legal right to appropriate the rents to themselves. They aver that in their capacity of tax sale certificate holders they paid to the municipality subsequent taxes for the years 1946 to 1948, inclusive, totaling $12,482.46. *Page 360 
These payments were made with a notation on the tax records "Paid to be represented by Eleanor S. Werbel, David Wasserman and Dorothy Goldfinger," and have been added to the amount paid for the tax sale certificate. The tax sale certificate holders allege in their complaint that there is now due them the sum paid for the tax sale certificate, plus the subsequent tax payments, an aggregate of $42,956.41, of which sum they demand payment or that the equity of redemption be foreclosed.
The mortgagees filed an answer and counterclaim in the tax foreclosure action, the allegations of which are identical with those of their complaint in the mortgage foreclosure suit. They allege that the legal title was procured with intent to impair, diminish and extinguish the security of the lien of their mortgage, and that by reason of the identity of the tax sale certificate holders and the owner, the acts and conduct of the defendants have been fraudulent. Judgment is demanded for an accounting of the rents, that the certificate of tax sale be discharged of record, that the amount due on plaintiffs' mortgage be fixed and a sale be directed.
The defendants argue (1) that the tax estate is not merged in the fee and is paramount to the lien of plaintiffs' mortgage, (2) that, as owner, they could collect the rents without obligation to pay taxes, and (3), inferentially from the allegations and demands in their complaint in the action for foreclosure of the tax sale certificate, that the mortgagees in order to redeem the tax sale certificate must pay the amount of the tax sale certificate, together with the subsequent tax payments, without credit for rents collected. The plaintiffs contend that the tax estate has merged in the fee and that the tax liens are extinguished.
The litigants in both actions are seeking equitable relief. The maxim that he who seeks equity must do equity applies "in every kind of litigation and to every species of remedy. The meaning is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, the court will not confer its equitable relief upon the party seeking its interposition *Page 361 
and aid, unless he had acknowledged and conceded, or will admit and provide for, all the equitable rights, claims and demands justly belonging to the adversary party, and growing out of or necessarily involved in the subject matter of the controversy."Pomeroy, Equity Jurisprudence (5th ed.), § 385.
In the application of the doctrines of merger and extinguishment, regard is had for the particular equities of the case. So the rule in equity is that an encumbrance may be kept alive or considered extinguished according as it will most advance the justice of the case. Neville v. Demeritt,2 N.J. Eq. 321 (Ch. 1840), "Stated generally, the law is, that when the mortgagee purchases the equity of redemption of the mortgagor, his mortgage is extinguished; it is said to be merged. But this general doctrine is subject to qualifications. Merger is not favored in equity, and is never allowed, unless for special reasons and to promote the intention of the party." Clos v.Coppe, 23 N.J. Eq. 270 (Ch. 1872). Merger is largely a question of intention. That a merger was not intended may be expressly declared or may appear from the particular equities of the case. Humrich v. Dalzell, 113 N.J. Eq. 310 (Ch. 1933);Gimbel v. Venino, 135 N.J. Eq. 574 (Ch. 1944).
The interest of a purchaser of land at a tax sale remains a mere lien on the premises during the period within which redemption is allowed to be effected, and it is a foreclosure of the right to redeem by which the owner's estate is cut off and extinguished. Burgin v. Rutherford, 56 N.J. Eq. 666 (Ch.
1898); affirmed, Kaighn v. Burgin, 56 N.J. Eq. 852 (E. A.
1898); Atlantic City v. Gardner, 124 N.J. Eq. 110 (Ch.
1938).
The deed from the owner of the fee to the tax sale certificate holders expressly recited that the conveyance was made subject to the tax lien and the mortgage. From this recital and the statements in the affidavit of David Wasserman, it may be accepted as true that the defendants did not intend to effect a merger. It is not true, however, that the defendants who claim this unique relation of owner-tax sale certificate *Page 362 
holder may collect the rents, retain them to the detriment of the mortgagee, and fail to account therefor. It would not be remiss to observe that the defendants as tax sale certificate holders had the right to foreclose their certificate long before the institution of the present tax foreclosure proceeding. Their disinclination to do so may be attributed to the comfortable position they were occupying as owners in the collection of rents. It strains credulity that equity should be expected to permit the execution of an arrangement whereby the defendants could at one and the same time occupy the dual roles of owner and tax sale certificate holder and squeeze the mortgagee, as in the jaws of a vise — on one side by the appropriation of rents collected and on the other by the addition of subsequent taxes to the tax sale certificate. The perpetration of so unconscionable an advantage, equity will not countenance.
"It is the duty of a mortgagor to pay taxes and municipal liens and to keep down prior encumbrances. * * * The mortgagor cannot acquire, and hold adversely, a tax title against the mortgagee, nor can his grantees, although all that the grantees purchased is the equity of redemption and there is no assumption of the mortgage debt." Stewart v. Fair-child-Baldwin Co.,90 N.J. Eq. 139 (Ch. 1919); reversed on another ground, 91 N.J. Eq. 86
(E. A. 1919); Ripley v. Schenck, 96 N.J. Eq. 547
(Ch. 1924); South Amboy Trust Co. v. McMichael Holdings,Inc., 141 N.J. Eq. 12 (Ch. 1947). It is clear, therefore, that if the owner of the premises had either directly or indirectly, openly or secretly, acquired the tax sale certificate, he could not claim priority over the mortgage.Junge v. Hutton, 3 N.J. Super. 17 (App. Div. 1949). There, Judge Bigelow said "The mortgagee of real estate, Mr. Salisbury, and the assignee of a tax sale certificate, Mrs. Junge, each claims priority of lien. The case turns on the question whether Mrs. Junge has beneficial title to the certificate that stands in her name, or whether she holds it on a secret trust for Hutton, who is the owner of the equity of redemption. If Mrs. Junge is the real owner, the certificate is the first lien. But if Hutton is *Page 363 
the equitable owner of the certificate, neither he nor Mrs. Junge can assert its priority as against the mortgagee."
In the instant case, the defendants were at the time of their acquisition of the tax sale certificate, strangers to the title and owed no duty to the mortgagee. Thus, they obtained a lien paramount in priority to the mortgage. However, upon the acquisition of the equity of redemption from the owner of the fee, subject to the mortgage, they stepped into the shoes of the owner, and it was thereafter their duty to discharge with regard to the payments of taxes the obligations which ownership imposed. The facts in the instant matter are substantially similar to those in State Mutual Building Loan Ass'n v. MillvilleImprovement Co., 74 N.J. Eq. 721 (Ch. 1908), decided by the late Chancellor Walker when he was Vice-Chancellor and affirmed on his opinion by the Court of Errors and Appeals, 76 N.J. Eq. 336
(1909). Chancellor Walker said: "Upon becoming the purchaser of the lands upon these conditions the defendant, the Millville Improvement Co., became obligated to extinguish its tax title as against the complainant's mortgage. It thereupon owed a duty to do so for as remarked by Vice-Chancellor VanFleet, in Foley v.Kirk, 33 N.J. Eq. 170: `It is a universal principle that a purchase at a tax sale by one whose duty it was to pay the taxes shall operate only as an extinguishment of the tax. One man can acquire no rights against another by a neglect of a duty which he owes to the other.'
"It is unnecessary to hold that when the Millville Improvement Co. acquired the tax title through the operations of Mr. Wood, the purchase was really made for the benefit of the mortgagor, the South Jersey Land and Transportation Company, in which case it would enure to the benefit of the mortgagee complainant. Ifby its contract of purchase the Millville Improvement Co. agreed,as part of the consideration, to take title subject toencumbrances, among which were the Landis Township taxes, then itjust as effectually became its duty to refrain from setting up anadverse tax title against the complainant's encumbrance as thoughit was obligated to pay the taxes in the first instance. *Page 364 
"The master correctly found that the claim of the defendant under its tax title could not be sustained, but that it was entitled to be subrogated to the rights of the township by way of tax lien, and to be reimbursed out of the sale of the mortgaged premises the sum paid for taxes, by way of lien paramount and prior to that of the complainant's mortgage. This is, in effect, providing for redemption." (Italics supplied.) See, also,Washington Loan Trust Co. v. McKenzie, 64 Minn. 273,66 N.W. 976 (Sup. Ct. Minn. 1896); American Baptist MissionaryUnion v. Hastings, 69 N.W. 1078 (Sup. Ct. Minn. 1897);Appleton Water Works Co. v. Central Trust Company of New York,93 Fed. 286 (C.C.A. 7th Cir. 1899); certiorari denied,175 U.S. 724, 44 L.Ed. 338, 20 Sup. Ct. 1021; McKinnon v.Bradley, 178 Ore. 45, 165 P.2d 286 (Sup. Ct. Ore. 1946).
So in this case, the defendants should be subrogated to the rights of the municipality for the sums paid for taxes at the time of the acquisition of the tax sale certificate and subsequent taxes, less net rents they collected during their ownership of the premises, for which balance they should have a lien paramount and prior to that of the plaintiffs' mortgage. Also they should be subrogated to the rights of the owner in any surplus moneys. Hoag v. Sayre, 33 N.J. Eq. 552 (E. A.
1881).
Therefore, the motion of the defendants for summary judgment is denied.
Plaintiffs' motion for consolidation will be denied since an action for the foreclosure of a tax lien is a strict foreclosure governed by statutory rules and may not be consolidated with any other cause of action except as provided by statute. In AtlanticCity v. Gardner, supra, it was held that in a suit for the foreclosure of a tax sale certificate the court could not entertain a counterclaim by a mortgagee for the foreclosure of his mortgage. The former proceeding is one for redemption of the tax lien by the persons entitled to redeem, the latter cause of action provides for public sale to the highest bidder. Garfieldv. Feier, 135 N.J. Eq. 44 (Ch. 1944). Furthermore, under the provisions of R.S. *Page 365 
54:5-101 in an action for the foreclosure of a tax sale certificate the filing of an answer stays proceedings in the Court of Chancery for four months from the date of such filing. In the instant case, answers having been filed in the tax foreclosure proceedings, that action is stayed until the expiration of the four month period.
On the other hand, in an action for the foreclosure of a mortgage, a tax sale certificate holder whose interest is that of a mere lien holder claiming priority may be made a party defendant, and in such a proceeding the equities between the parties may be adjusted. Burgin v. Rutherford, supra; Sorg v.Tower, 119 N.J. Eq. 109 (Ch. 1935).
Rule 3:42-1, as amended, provides that when actions involve a common question of law or fact arising out of the same transaction or series of transactions, are pending in the same venue or vicinage of a division of the court, a joint hearing or trial of any or all the matters in issue in the actions may be ordered, and the court may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Therefore, at the expiration of the stay of the tax foreclosure action, a joint trial may be ordered if at that time the issues raised have not already been adjudicated in an earlier trial of the mortgage foreclosure action.
Plaintiffs' motion to amend their complaint is granted.